**GROUP HOSPITAL SERVICE, INC.,**
*Appellant,*

v.

**Arthur Frank BARRETT et al., Appellees.**

**No. 48.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Feb. 21, 1968.

Rehearing Denied March 20, 1968.

Richard B. Miller, Perry O. Barber, Jr., Baker, Botts, Shepherd & Coates, Houston, for appellant.

Tom Alexander, Jonathan Day, Butler, Binion, Rice, Cook & Knapp, Houston, for appellees.

TUNKS, Chief Justice.

This suit involves the construction of three hospital service contracts. One plaintiff, Dr. Arthur Frank Barrett, a radiologist, is the holder of an individual direct pay membership under a hospital service contract designated as being of the "three hundred series." The plaintiffs, Shirley Patrick and Ruth V. Keck, are employees of Pasadena General Hospital and, as members of that group of employees, are participants in a group hospital service contract. The plaintiffs, Pricilla Gibbs, Anna Beth Campbell, and Dr. Vincent Collins, also a radiologist, are employees of Baylor Uni-

versity School of Medicine in Houston, and, as such employees, are beneficiaries under a group hospital service contract covering such employees. Each of the three contracts in question contains somewhat different language as will be hereinafter noted.

In all of the contracts in question the defendant, Group Hospital Service, Inc., agreed to furnish the hospital service. Group Hospital Service, Inc., is popularly called Blue Cross and will be sometimes referred to herein by that name. Blue Cross was the defendant in the trial court and is the appellant here. Blue Cross is a non-profit corporation organized under Vernon's Annotated Texas Statutes, Insurance Code, Article 20.01.

The plaintiffs in their petition seek a declaratory judgment under Article 2524–1, Vernon's Ann.Tex.Civ.St. They maintained the suit not only as individuals, but also as representatives of classes "consisting of all other members of Blue Cross who hold membership agreements with similar provisions regarding X-ray services as are included" in the contracts here in question.

The plaintiffs presented to the trial court a motion for summary judgment. In response to that motion the trial court rendered judgment construing the contract of which the plaintiff, Dr. Barrett, was a beneficiary—the "three hundred series" contract—and the contract under which the employees of the Baylor University School of Medicine were beneficiaries as contended for by the plaintiffs, and construing the contract under which the Pasadena General Hospital employees were beneficiaries consistent with the contentions of Blue Cross. Blue Cross has appealed from that portion of the judgment adverse to its position.

The langauge of the contracts which is in dispute has to do with the furnishing of X-ray services. The language of the "three hundred series" contract provides that Blue Cross shall furnish room accommodations, etc., in a hospital together with

"all other usual hospital services necessary to the treatment of the patient, ordered by the attending physician, for use while in the hospital—except blood and plasma, but including transfusion services and blood typing and cross-matching of patient and donor."

In the contract covering the Baylor University School of Medicine employees, Blue Cross is obligated to furnish room accommodations, etc., and "X-ray examinations, up to $40.00 each period of hospital confinement." Such service, under this contract, is to be furnished "only when supplied by the hospital, at the request of the attending physician, and used by the patient while confined to the hospital."

Depositions of all of the plaintiffs and of Mr. Walter R. McBee, Executive Director of the defendant, Blue Cross, were taken. Affidavits of two radiologists were filed in support of the motion for summary judgment. The evidence shows that a number of contractual relationships creates the background of this controversy. As above noted, Group Hospital Service, Inc. (Blue Cross) is a non-profit corporation. As such, it enters into agreements to furnish certain designated hospital services to various groups. Some of the groups consist of the employees of specified employers. In those situations, a basic agreement is made by Blue Cross and the employer and the individual employees by various forms of sub-agreements, become members participating in the agreement to furnish hospital services. The "three hundred series" contract in which the plaintiff, Dr. Arthur Frank Barrett, is a participant, is somewhat different. Dr. Barrett is not a participant as an employee of an employer who is a party to a basic contract. He, rather, is designated a "direct pay member" which distinguishing terminology is based on the fact that under the arrangement to furnish hospital service to specified employee groups, it is usually the employer who pays the consideration to Blue Cross. Whether the employer does or does not, in turn, collect from his employees the money to be used in paying that consideration, depends upon the contract of employment. If the employer does so collect from his employees, then the employees pay Blue Cross indirectly. Dr. Barrett, not being such an employee, is a member of a group contracting for hospital service and who pays directly to Blue Cross the consideration for that service. These agreements are, generally, non-cancellable by Blue Cross. That is, the beneficiary member can, subject to some conditions not here significant, maintain his rights to benefits so long as he continues to pay for them. The charges to members are, however, subject to adjustment from time to time. Since Blue Cross is a non-profit corporation, those adjustments are, theoretically, made in such amounts as to make the income from members equal to the amount paid out by the corporation. Our economy being what it has been for the past several years, those adjustments, generally, have been upward.

These contracts are referred to as agreements by Blue Cross to furnish hospital service, and the beneficiaries thereunder are referred to as members. In fact, the organization of such a corporation as Blue Cross, and the supervision of its operation, are provided for by Chapter 20 of the Texas Insurance Code, V.A.T.S. The contracts here in question are commonly referred to as group insurance policies and the members are called insureds. We will, for the sake of simplicity, sometimes use that terminology in this opinion.

Another arrangement that is significant is that between Blue Cross and many hospitals. Those hospitals with whom Blue Cross makes contracts are referred to as "Member Hospitals." Those are the hospitals, generally, through which Blue Cross furnishes the hospital services in discharge of its obligation to so furnish hospital services to the members of the various groups with which it has contracted. (The agreements between Blue Cross and the groups of beneficiaries also makes some provisions for furnishing services at "non-

member hospital," but a discussion of those provisions is not necessary to this opinion.) The provisions with which we are most concerned of those agreements between Blue Cross and the member hospitals are the provisions which fix the amount of the charges by the hospital for the various specified services to Blue Cross members (insureds). In those agreements, the hospitals agreed to furnish various specified services to Blue Cross members at agreed on charges. Those agreements provide that the hospital, having furnished the services to a Blue Cross member, will bill Blue Cross for those services.

Insofar as those contracts between Blue Cross and its member hospital call for the furnishing of services that can be and are furnished by the hospitals and its employees, no problem here exists. Services in that category would include rooms, meals, drugs, nursing care, and so forth. But some of the services provided for in the contract are of such a nature that they can be performed, at least in part, only by a licensed physician. X-ray services to be furnished by the hospital fall within that category. Employees of the hospital who are not licensed physicians can perform some functions in exposing and developing the X-ray film. The charge by the hospital to Blue Cross for X-ray service includes a charge for those services as well as charges for the film itself and for the use of hospital X-ray equipment. But only a licensed physician can read and interpret the X-ray film. Thus, when a member hospital agrees to furnish Blue Cross members X-ray service while that member is confined to the hospital, it has agreed to furnish a service in which a licensed physician must participate.

In discharge of this contractual obligation to Blue Cross and its members, the member hospitals have established a practice from which the other contractual arrangement relevant to this dispute arose. The member hospital contracted with licensed physician-radiologist to furnish that portion of the X-ray service which was subject to being performed only by a licensed physician. Under those contracts between the hospital and the radiologist, the hospital paid the physician for his professional service and then billed Blue Cross for the entire amount of the charge provided for in its contract with Blue Cross for the X-ray service in question. The hospital bill to Blue Cross was based on an agreed charge that covered not only the function of the hospital employees, the X-ray film, and the use of the hospital X-ray equipment, but also compensation to the hospital for what it had paid to the radiologist for his professional service.

In time, the radiologists became dissatisfied with this arrangement. Some of them discontinued their agreements with the hospitals. For example, one such radiologist had such an agreement with Heights Hospital in Houston, Texas. Heights Hospital was a member hospital who had an agreement with Blue Cross to furnish X-ray service to its members when they were confined in that hospital and when such service was ordered by the attending physician. After the termination of the agreement between the radiologist and Heights Hospital, the hospital was still obligated under its contract with Blue Cross, to furnish X-ray service. Since the participation of a licensed physician was necessary in discharging that obligation, Heights Hospital would, when X-ray service was ordered by the physician attending a Blue Cross member confined therein, call on a licensed physician to participate in that service. But since the hospital had no agreement to pay the physician, he, the physician, would submit his bill directly to the patient—the Blue Cross member. The patient-member, being entitled to have that service by Blue Cross, would seek either to have the radiologist bill paid by Blue Cross, or reimbursement if he paid it himself.

(The evidence showed that, after Heights Hospital had abandoned its contract with the radiologist to pay them for X-ray services to Blue Cross members, Blue Cross

revised its contract with the hospital by reducing the schedule for charges for X-ray services by about 25%. This was because the bills for X-ray services from the hospital to Blue Cross no longer included what the parties called "the professional component.")

Some incidental questions have arisen out of this situation. There is some dispute as to whether the contracts between the hospitals and the radiologists created an independent contractor situation or an employer/employee relationship. There is a suggested question as to the illegality of incorporated hospitals performing professional medical services. There is also a question of professional ethics involved in the manner in which radiologists acting under contracts with hospitals, rendered their services. We feel that the disposition we make of this case does not require a discussion of those questions.

After the radiologists had quit performing services under the contractual arrangements with the hospitals and had started billing the patients directly, Blue Cross began to receive from its members claims for direct payment for X-ray services. On June 27, 1966, Blue Cross wrote a letter addressed to "all Texas physicians and Blue Cross member hospitals." It was in that letter announced that a conclusion had been reached by Blue Cross "that many Blue Cross contracts, providing benefits for such (specialty) services when ordered by the attending physician and supplied by the hospital, do not have any benefits for such specialty services when provided by and billed directly by the physician. Benefits under such contracts cannot be split or divided between the hospital and the physician. Only the hospital benefits can be paid and no payment can be made to the physician under these contracts."

Blue Cross declined to pay those claims which were submitted to it directly by the member rather than by the hospital even though those claims were for X-ray services performed at the request of the attending physician and at the hospital while the member was confined as a patient at a member hospital. To the affidavit of Dr. Leonard C. Doubleday, a radiologist, filed in support of plaintiff's motion for summary judgment, there are attached 20 copies of letters written to Blue Cross members by Blue Cross refusing payment under such circumstances.

The radiologists were, of course, seriously affected by this development. It is obvious that the collection of their fees for their services is much more certain if the patient is the beneficiary of a contract in the nature of an insurance policy providing for the payment of those fees by an insurer. It is in the protection of that interest that they have caused the institution of this suit by the plaintiffs.

The defendant appellant has taken three basic positions in its attack upon the trial court's judgment. It is claimed that the named plaintiffs are not proper representatives of the classes they purport to represent so that the maintenance of this suit as a class action under Rule 42, Texas Rules of Civil Procedure, is improper. It is the position of the defendant that no justiciable controversy exists as between the plaintiffs and the defendant so as to give the trial court jurisdiction to entertain a suit for declaratory judgment under Article 2524-1, V.A.T.S. Finally, the appellant contends that the trial court committed substantive error in construing the above quoted language of the Blue Cross hospital service contracts. We will discuss the various positions of the appellant in the order listed, because our disposition of each of them, in that order, will have a bearing on our consideration of the others.

■ The conditions required by Rule 42 for the maintenance of a class action exist here. The persons constituting the class are so numerous as to make it impractical to bring them all before the court. There is a common question of law in the construction of the contracts. While we

do not believe it necessary to the disposition of this case to decide which of the subsections of Rule 42 is applicable, we are of the opinion that this is a "spurious" class action provided for in Rule 42(a) (3). 1 McDonald, Texas Civil Practice 338, Sec. 3.34.1; 3 Moore's Federal Practice 3456, Sec. 23.11.

■ The determination that this is a situation wherein a class action may properly be maintained, does not, however, answer all of the questions with which we are here confronted in this phase of this appeal. There remains the question as to whether the named plaintiffs are proper representatives of the classes as required by Rule 42 to the extent that the interests of the other members of the classes will be fairly insured of adequate representation. That is a matter generally addressed to the sound discretion of the trial court, but the trial court's ruling, nevertheless, subject to review. Richardson v. Kelly, 144 Tex. 497, 191 S.W.2d 857; Allred v. Heaton, Tex.Civ.App., 336 S.W.2d 251, ref., n.r.e.

■ We have recited at length the background from which the controversy here involved arose. We have deemed that recitation necessary as relevant to the question of the propriety of the representation by these named plaintiffs of the classes which they purport to represent. The evidence shows that every one of these plaintiffs was either a radiologist, an employee of a radiologist or one whose work was closely connected with that of a radiologist. The expense of the lawsuit is being borne by the radiologists. The evidence also shows that no one of these named plaintiffs has ever presented to and had rejected by Blue Cross, a claim for reimbursement for X-ray service performed upon him by a radiologist while confined to a hospital and which X-ray service was ordered by his attending physician.

The contractual relationship between Blue Cross and its member hospital, resulted in placing a limitation upon the fees that could be charged by the hospital for X-ray services performed by Blue Cross members while confined to those hospitals. If Blue Cross is to be required to pay for X-ray services performed by radiologists to its members while confined in member hospitals on the basis of direct bills submitted either by the member of Blue Cross or his radiologist, such contractual limitation obviously is not applicable to the amount which Blue Cross would be required to pay. It has also been noted that the charges to be paid by Blue Cross to its members for the hospital services furnished is subject to periodic adjustment, that Blue Cross operates on a non-profit basis and that any increase in payments made by Blue Cross would result in an upward adjustment of the charges made by it to its members.

Under those circumstances, we think it is highly probable, in fact, almost certain, that some of the members of the class whom the named plaintiffs seek to represent, anticipating an increase in the charge to be made to them, would contend that Blue Cross should not be required, under its agreements, to pay any other bills for X-ray services than those billed to it directly by the hospital in accordance with the contractual limitations provided for such billing. There, consequently, exists a conflict between the general members of the class, or some of them, and these named plaintiffs. Under those circumstances we hold that the named plaintiffs were not proper representatives of the general members of the class whom they purport to represent. Allred v. Heaton, supra.

■ These plaintiffs, however, maintain this action not only as the representatives of a class, but also individually. Thus, even though we hold that the action is not properly maintainable as a class action because the named plaintiffs are not proper representatives of the classes sought to be represented, there remains to be disposed of that portion of the litigation wherein they sued individually for a declaratory judgment construing the con-

tracts. It is in that phase of the case that the question becomes relevant as to whether or not a justiciable controversy exists between these plaintiffs in their seeking individual relief and Blue Cross.

As noted above, not one of the named plaintiffs has ever had a claim for reimbursement for X-ray service furnished him while confined to a hospital at the request of his attending physician. Certainly no such request for reimbursement had ever been rejected by Blue Cross. It is true that the affidavit of Dr. Doubleday submitted in support of plaintiff's motion for summary judgment, showed that other members of Blue Cross had presented such claims and had had them rejected by Blue Cross. But we have held that these named plaintiffs may not properly maintain this action as representatives of the classes consisting of other members of Blue Cross. We therefore cannot look to the controversies, if any, between other members of the class and Blue Cross to determine the existence of a justiciable controversy between these plaintiffs and Blue Cross. We hold that under the circumstances, no justiciable controversy exists as between these named plaintiffs and Blue Cross. California Products, Inc. v. Puretex Lemon Juice, Inc. 160 Tex. 586, 334 S.W.2d 780; Reuter v. Cordes-Hendreks Coiffures, Inc., Tex.Civ.App., 422 S.W.2d 193, n.w.h.; Allred v. Heaton, supra; 26 C.J.S. Declaratory Judgments § 28, p. 104.

■ To demonstrate the futility of undertaking to identify a possible controversy between these named plaintiffs and Blue Cross, it should be noted that should such a claim for reimbursement ever arise, as between these named plaintiffs and Blue Cross, it would be a claim for money payment under the terms of the contracts in question. We cannot, under the present status of that contingent controversy, determine even that it would be one within the jurisdiction of the district court. In fact, it is more than probable that any one claim of any of the named plaintiffs, or even any combined claims of all of them, would be for an amount of money less than $500.-00, the lowest jurisdictional limit of the district court in which this suit was filed.

Since we have held that these plaintiffs could not properly maintain this action as representatives of the classes whom they sought to represent, it was necessary in order for the trial court to have jurisdiction over the suit maintained by these plaintiffs in their individual capacities for declaratory judgment, that there exist a justiciable controversy between these plaintiffs and the defendant, Blue Cross. We have held that no such justiciable controversy existed, therefore, the trial court did not have jurisdiction over this lawsuit by these plaintiffs in their individual capacities. Since the trial court had no jurisdiction, we have none. Orange Independent School Dist. v. West Orange Independent School Dist., Tex.Civ.App., 390 S.W.2d 81, writ ref., n.r.e.

Our conclusion that there is no justiciable controversy, of course, prevents our consideration of the substantive question presented—the construction of the language of the contracts in question.

The appellant, in its brief, contends that the entire judgment of the trial court, including that portion of such judgment favorable to appellant, should be vacated and the entire case dismissed. In view of that request by appellant and our conclusions above stated, the judgment of the trial court is vacated and the case is dismissed.