**DRESSER INDUSTRIES, INC., Titan Services, Inc., B.J. Services Company, U.S.A., Inc., B.J. Hughes Holding Company, Baker Hughes Production Tools, Inc., and Baker Hughes, Inc., Appellants,**

v.

**Glyn SNELL, et al., Appellees.**

No. 08–91–00354–CV.

Court of Appeals of Texas, El Paso.

Feb. 3, 1993.

Rehearing Overruled March 3, 1993.

David Corban, Fulbright & Jaworski, Houston, James E. Nelson, Shafer, Davis, McCollum, Ashley, O'Leary & Stoker, Odessa, Ronald D. Secrest, Beck, Redden & Secrest, Christopher C. Pappas, Dunn, Kacal, Adams, Pappas & Law, Houston, James P. Boldrick, Boldrick & Clifton, Midland, Mike A. Hatchell, Ramey, Flock, Jeffus, Crawford, Harper & Collins, Tyler, for appellants.

Don Graff, McCleskey, Harriger, Grazell & Graff, Lubbock, Vann Culp, Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Midland, Jim Hund, McCleskey, Harriger, Brazill & Graf, L.L.P., Lubbock, for appellees.

Before OSBORN, C.J., and BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

This is an interlocutory appeal from an order certifying a class action under Tex. R.Civ.P. 42. The plaintiffs are owners of royalty or overriding royalty interests in one or more of 523 West Texas oil wells. We affirm the order certifying the case as a class action.

## FACTS

This suit involves a number of oil wells operated by Parker & Parsley Petroleum Company. Some of the wells were not as productive as the company wished, so it contracted with Appellant Dresser Industries, Inc., a well servicing company, along with its subsidiaries and successor companies, (collectively "Dresser" or "defendants") to treat the wells between 1983 and 1988. The treatments consisted of acidizing and fracturing the wells.[1] Plaintiffs allege that the servicing companies committed fraud, negligence and gross negligence during the servicing of each of the wells, which resulted in damage to every owner of a royalty or overriding royalty interest.[2] Specifically, plaintiffs allege that defendants engaged in a systematic shorting scheme which involved cheating on the sand, gel, acid and breaker used to service the wells. In essence, there was a serious difference between the materials specified for jobs, and the materials actually used for acidizing and fracturing the formations.

The shorting scheme was allegedly common practice for about six years. Plaintiffs claim that this shorting on materials resulted in reduction of the length and height of the fractures in the formation, which in turn reduced the amount of oil that could ultimately be recovered from the wells. Thus, their royalty and overriding royalty interests were damaged. Defendants deny that this case is suitable for class certification, and assert that the trial court abused its discretion in certifying the class for the reasons outlined below.

## STANDARD OF REVIEW

Trial courts enjoy a wide range of discretion in determining whether a lawsuit should be maintained as a class action. An order certifying a class may not be disturbed on appeal unless a trial court has clearly abused its discretion. *Chevron U.S.A. Inc. v. Kennedy,* 808 S.W.2d 159, 161 (Tex.App.—El Paso 1991, writ dism'd w.o.j.); *Amoco Production Co. v. Hardy,* 628 S.W.2d 813 (Tex.App.—Corpus Christi 1981, writ dism'd). A trial court abuses its discretion only when its actions are without reference to any guiding principles, are arbitrary or unreasonable. *Smithson v. Cessna Aircraft Company,* 665 S.W.2d 439, 443 (Tex.1984); *Craddock v. Sunshine Bus Lines,* 134 Tex. 388, 133 S.W.2d 124, 126 (1939). That a trial judge decided an issue differently than would the appellate judge, does not alone demonstrate an abuse of discretion. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex. 1985). In reviewing the order certifying the plaintiffs' class, this Court is required to view the evidence in a light most favor-

---

1. Acidizing is the injection of hydrochloric acid into the well to enlarge and reopen pores in oil-bearing limestone formations. Fracturing is the opening of underground channels in oil-bearing formations by force.

2. The owner of the working interest in the 523 wells, Parker & Parsley, brought suit against the same servicing parties in U.S. District Court for the Western District of Texas based upon the same allegations. Federal jurisdiction was based upon violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. (1984) ("RICO"), along with common-law claims for fraud, breach of contract,

breach of warranty, negligence and gross negligence. The district court eventually dismissed the RICO claims but maintained jurisdiction over the common-law causes of action. Parker & Parsley obtained a substantial verdict for actual and punitive damages.

On appeal, however, the Fifth Circuit held that once the RICO counts had been dismissed, the federal court lost jurisdiction and should have dismissed the case. It reversed and vacated the district court's judgment. Parker & Parsley has apparently refiled the suit in state court. *Parker & Parsley Petroleum Co. v. Dresser Industries,* 972 F.2d 580 (5th Cir.1992).

able to the trial court's action and indulge every presumption favorable to the trial court's judgment. *Parks v. U.S. Home Corporation,* 652 S.W.2d 479, 485 (Tex. App.—Houston [1st Dist.] 1983, writ dism'd).

■ In order to maintain this lawsuit as a class action, plaintiffs must first satisfy four requirements: the class is so numerous that it is impracticable to join all members; there are common questions of law or fact; the representative parties have claims or defenses typical to the class; and the representatives will fairly and adequately protect the interests of the class. Tex.R.Civ.P. 42(a); *Chevron,* 808 S.W.2d at 161. Once these prerequisites are shown, the plaintiffs must also plead and prove that the action falls within one of the categories for maintenance of class action set forth in Tex.R.Civ.P. 42(b). *See George v. United Federal Savings and Loan Association,* 63 F.R.D. 631, 636 (N.D.Ga.1974).[3] Defendants initially challenge the trial court's findings on the issues of commonality, typicality and adequacy of representation. Numerosity is not disputed.

## COMMONALITY

■ The factual or legal basis for the suit must be common to all members of the class in a class action. Tex.R.Civ.P. 42(a). The commonality requirement, however, does not mean all questions of law and fact must be identical, but rather that an issue of law or fact exists that inheres in the complaints of all the class members. *Cooper v. University of Texas at Dallas,* 482 F.Supp. 187, 191 (N.D.Tex.1979). There are a number of common issues to be decided here, including: whether defendants participated in a tortious scheme to short materials in the 523 wells; whether the defendants' acts caused damage to the class of royalty and overriding royalty interest owners; whether defendants' acts were such that punitive damages should be assessed. The common questions here are sufficient to justify the certification of a class.

## TYPICALITY

■ The claims of the class representatives must be typical of the claims of the class as a whole. Tex.R.Civ.P. 42(a); *Gilchrist v. Bolger,* 89 F.R.D. 402, 406 (S.D.Ga.1981); *Pellman v. Cinerama, Inc.,* 89 F.R.D. 386, 389 (S.D.N.Y.1981). The United States Supreme Court has defined the typicality requirement as mandating that the representative "possess the same interests and suffer the same injury." *East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453, 462 (1977). Although it is not necessary that the named representative suffer precisely the same injury as the other class members, there must be a nexus between the injury suffered by the representative and the injuries suffered by other members of the class. *See Gilchrist,* 89 F.R.D. at 404–05. The claims or defenses need not be identical or perfectly coextensive, only substantially similar. *Chevron,* 808 S.W.2d at 162. In the *Chevron* case, this Court reviewed a class certification order that also involved royalty interest owners with differing individual damage claims. Because the class claims were based upon the same event or the same legal theories, however, this Court ruled that the varying damage claims would not defeat class certification.[4] This case is similar to *Chevron,* and we will follow our reasoning in that case here.

■ Defendants first argue that the claims necessarily arose from conduct that varied from well to well and job to job, destroying the typicality of the class repre-

---

3. Tex.R.Civ.P. 42, which governs class actions in Texas, is patterned after Fed.R.Civ.P. 23. For that reason, federal case law interpreting the federal class action rule is frequently utilized by Texas courts to construe Tex.R.Civ.P. 42. *See Smith v. Lewis,* 578 S.W.2d 169, 172 (Tex.App.— Houston [14th Dist.] 1979, writ ref'd n.r.e.).

4. *But see Amoco Production Co. v. Hardy,* 628 S.W.2d 813, 817 (Tex.App.—Corpus Christi 1981, writ dism'd) (class of royalty interest owners decertified because each claim was under a differing lease, requiring individual findings as to each, thus common questions did not predominate).

sentatives' claims. This argument fails for the following reasons.

The class representatives all own royalty or overriding royalty interests in one or more of the 523 wells. Their claims all stem from the same systematic shorting scheme in servicing the wells, which a number of defendants' employees witnessed and documented. The claims are all based upon identical tort theories of common-law fraud, negligence and gross negligence. The plaintiffs all seek money damages in tort.

■ Second, defendants argue that the existence of three different defenses with varying impact on the different class members destroys typicality. The defenses they present are limitations, lack of misrepresentation and ratification. Defendants rely upon the authority of *Adams v. Reagan*, 791 S.W.2d 284 (Tex.App.—Fort Worth 1990, no writ), in urging that the presence of even an arguable defense peculiar to a named plaintiff or small subset of class members destroys typicality. This reliance on *Adams* is seriously misplaced. Far from supporting defendants' position, *Adams* holds that "where the defendant is alleged to have engaged in a common course of conduct, the commonality requirement is met and class certification is appropriate.... Fraud perpetrated on numerous persons through the use of similar misrepresentations may be suitable for class action." *Adams*, 791 S.W.2d at 289. Indeed, *Adams* specifically rejects the argument urged by defendants, that differing defenses necessarily destroy commonality. "Despite the fact that one of a variety of devices for deceit may have been used upon differing claimants, nevertheless a common thread of deceit runs through all alleged claims." *Id.* at 291. That common thread was sufficient to satisfy the commonality requirement there, and we hold that the overall scheme alleged by plaintiffs is likewise sufficient here.

## ADEQUACY OF REPRESENTATION

■ The named parties in a class action must fairly and adequately protect the interests of the class. Tex.R.Civ.P. 42(a). Adequacy of representation is a question of fact and must be determined based on the individual circumstances of each case. It is addressed to the sound discretion of the court. *Group Hospital Service, Inc. v. Barrett*, 426 S.W.2d 310, 315 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.); *Brittian v. General Telephone Company of the Southwest*, 533 S.W.2d 886, 889 (Tex.Civ.App.—Fort Worth 1976, writ dism'd). Factors we consider in deciding whether the named plaintiffs adequately represent the class include: the adequacy of counsel, potential conflicts of interest, the personal integrity of the plaintiffs, the representative's knowledge of the litigation and belief in the legitimacy of the grievance, whether or not the class is unmanageable because of geographical limits and whether the plaintiffs can afford to finance the class action. *See Salvaggio v. Houston Independent School District*, 709 S.W.2d 306, 310 (Tex.App.—Houston [14th Dist.] 1986, writ dism'd). The primary issue is whether any antagonism exists between the interests of the named plaintiffs and those of the remainder of the class. Only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status. *Adams*, 791 S.W.2d at 291.

■ Defendants' primary contention in this area concerns the way this lawsuit was initiated. Following the verdict in the Parker & Parsley litigation in federal court, one James Mitchell and his mother, Myrle, formed Toshi Petroleum, Inc., as is a vehicle for funding the present litigation. Mitchell then sent 2,000 letters to royalty owners with interests in the 523 wells where the shorting allegedly occurred. In those letters, he offered to pledge $50,000 for legal fees, if royalty owners would assign Toshi a one-third interest in any recovery they ultimately received. He received the one-third assignment from about 600 class members. Mitchell himself is not a class representative. We fail to see how his acts impact upon the propriety of certifying this case as a class action.

■ Defendants also urge that various conflicts of interest exist because class rep-

resentatives Snell and Wright share a lease interest with Mitchell. We fail to see how this common lease interest would impede the ability of the two class representatives to perform their duties. This nebulous link between the representatives and Mitchell will not defeat certification.

■ Similarly, defendants claim that because class representatives Walton and Tatom received legal advise from one of the law firms representing the class, there is a conflict which precludes their acting as class representatives. Initially, we note that the record does not reflect that Tatom received this advice (which was not to sign the contingent fee agreement sent by Mitchell). Second, defendants admit that the same advise may have been given to the entire class, in which case no favorable treatment was received by any class representative. Third, this purported conflict is so speculative that we are hard-pressed to say how it would effect the ability of these gentlemen to serve as class representatives.

■ Defendants next argue that because class representatives Walton, Key and Midkiff hold interests in Parker & Parsley, that would prevent them from suing that company if such became necessary. They cannot point to any substantiation for this supposition in the record, however, nor do they cite any legal authority for the contention that this is a conflict which would prevent these plaintiffs from adequately representing the class.

■ Defendants finally contend that the named plaintiffs cannot adequately represent the class because they do not possess technical knowledge about the oil business, and they are not sufficiently enthusiastic about pursuing their claims. The law does not require that class representatives have technical expertise; it only requires that they have the same interest and injury as other class members. *East Texas Motor Freight*, 431 U.S. at 403, 97 S.Ct. at 1896. Moreover, we believe the class representatives have displayed sufficient interest and diligence to pursue this case. We find that adequacy of representation has been established.

## RULE 42(b) RULING

Once the elements of numerosity, commonality, typicality and adequacy of representation are met, plaintiffs are still required to show that this case falls within one of the categories enumerated in Tex. R.Civ.P. 42(b). Only one of Rule 42(b) categories need be met. *Adams*, 791 S.W.2d at 292. The trial court here found that the class satisfied the requirements of both Rules 42(b)(1)(A) and 42(b)(4). That is, the court found that prosecution of different actions by the individual class members would create a risk of:

> [I]nconsisten[cy] ... with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class. Tex.R.Civ.P. 42(b)(1)(A).

Or, alternatively:

> [Q]uestions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Tex.R.Civ.P. 42(b)(4).

In its order certifying the class, however, the trial court held that although the class action was maintainable under both criteria, it would proceed only under Rule 42(b)(4). We therefore need not address defendants' contentions that the class cannot meet the requirements of Rule 42(b)(1)(A). We will address, instead, the issue of whether common questions predominate the litigation, and whether class action is the best means for resolving this controversy.

■ The test for establishing predominance of common issues is whether they will be the object of most of the efforts of the parties and court, not whether common issues outnumber individual issues. A judgment in favor of the class members should decisively settle the entire controversy, and all that should remain is for class members to file proof of their claims. *Life Insurance Company of the Southwest v. Brister*, 722 S.W.2d 764, 772 (Tex.

App.—Fort Worth 1986, no writ). In deciding whether common issues predominate, the trial court need only identify substantive law issues that will control the litigation; the court does not weigh the substantive merits of each class member's claim, nor need the class representatives make any extensive evidentiary showing of their right to prevail. *Id.* at 772–73. Further, even in cases where it is not conclusively established that common issues predominate, the most efficient approach is for the trial court to certify the class, and if necessary after the case is developed, to dissolve the class or certify subclasses if common questions will not predominate at trial. *Brister,* 722 S.W.2d at 775.

■ The plaintiffs, in their original petition, urge that the questions common to all class members are:

(a) Whether the Defendants participate in a negligent, grossly negligent, or fraudulent scheme in their servicing of the 523 oil wells involved in this suit;

(b) Whether the Defendants pursued a concerted action and/or aided and abetted one another in the negligence, grossly negligent, and fraudulent scheme in the servicing of the 523 oil wells involved in this lawsuit;

(c) Whether the members of the class have sustained damages, and if so, the proper measure of damages;

(d) Whether a judgment signed on November 27, 1990 in cause number MO–89–CA–193 in the United States District Court for the Western District of Texas, Midland–Odessa Division, styled *Parker & Parsley Petroleum Co., et al. v. Dresser Industries, Inc., et al.* (the 'Federal Suit') precludes re-litigation of liability and damages in this suit and thereby establishes the Defendants' liability and damages as a matter of law.[5]

These issues are common to all the class members, and are more than sufficient to satisfy the first prong of Tex.R.Civ.P. 42(b)(4). Although there are individual questions regarding representations, reliance, damages, defenses and the facts surrounding defendants' activities at each of the 523 wells over a six year period, and these must all be addressed, the common issues identified above predominate and their resolution will substantially advance the resolution of this lawsuit.

■ In assessing whether a class action is the superior method of disposing of this controversy, we find that the following factors are significant. First, at least 600 class members have indicated, by assigning a portion of their recovery to Toshi Petroleum Co., their desire to have common issues resolved in a class action. Second, all class members will benefit from the discovery which has been conducted, thus eliminating duplication of effort. Third, the trial judge has already spent substantial time and effort familiarizing himself with the issues, which will encourage an expeditious and fair result. We therefore hold that class action is the superior means of resolving this dispute, and that any difficulties it might entail are outweighed by the benefits of class-wide resolution of common issues.

## STANDING

Defendants argue that class certification was improper because the class representatives lack standing to bring this action on three counts: because they cannot establish an essential element of their fraud cause of action, because their negligence cause of action is merely a thinly disguised claim for breach of contract and because they cannot sue for damage to their royalty interests until the production and sale of the hydrocarbons takes place. Defendants confuse the legal concept of standing with ability to prove the merits of a cause of action.

■ Standing deals with whether a litigant is the proper person to bring a

---

5. As set out in footnote 2, the federal suit was reversed by the Fifth Circuit in September 1992. Offensive collateral estoppel, as envisioned by plaintiffs when they filed this suit, is therefore not presently available. If the state court *Parker & Parsley* case is tried before this one, however, estoppel might again become a viable theory.

lawsuit, not whether that party can ultimately prevail on its claims. Standing consists of some interest peculiar to the person (or here, the class) which is not shared by the general public. *Hunt v. Bass,* 664 S.W.2d 323, 324 (Tex.1984); *Precision Sheet Metal Mfg. Co., Inc. v. Yates,* 794 S.W.2d 545, 551 (Tex.App.—Dallas 1990, writ denied). Persons have standing to sue if they can show: (1) they have sustained some direct injury as a result of a wrongful act; (2) there is a direct relationship between their alleged injury and the claim sought to be adjudicated; (3) they have a personal stake in the controversy; (4) the challenged action has caused them an injury in fact, whether economic, recreational, environmental or otherwise; or (5) they are appropriate parties to assert the public's interest in a matter, as well as their own. *Yates,* 794 S.W.2d at 551–52; *Billy B., Inc. v. Board of Trustees of the Galveston Wharves,* 717 S.W.2d 156, 158 (Tex.App.—Houston [1st Dist.] 1986, no writ).

■■■ The class representatives and members here clearly have tangible and legally protectible interests at stake. They each own an interest in oil wells which are alleged to have been systematically shorted in the production-enhancing process. If they prevail, they will all have claims for money damages against defendants. They certainly have standing to bring this lawsuit, whether or not they can ultimately win each of their causes of action. Class certification is not the appropriate stage of litigation for evaluating the substantive merits of each class member's claim. We therefore find that the trial court did not err in determining that the class here has standing to sue.

## OVERBROAD CLASS

■■■ Defendants further argue that the class as framed by the trial court is overbroad. The class is defined "to include persons and other entities who now own or who have ever owned a royalty interest and/or an overriding royalty interest in the 523 wells...." Where, as here, class certification is ordered early in a proceeding, before supporting facts are fully developed, the courts have held that the trial court should favor maintenance of the class action. This is because the class is always subject to modification or decertification. As this Court has held, the trial court has the authority to alter, amend or withdraw the class determination, in the event it is determined the class is overbroad. It can also designate subclasses if necessary. *Chevron,* 808 S.W.2d at 162–63. At this stage of the litigation, we cannot say that the trial court has designated an overbroad class.

## FACTUAL AND LEGAL INSUFFICIENCY

■■■ Finally, defendant Dresser urges that there is no evidence, or insufficient evidence, to establish the necessary elements for class certification under Tex. R.Civ.P. 42. To entertain such contentions at this stage of the litigation would require us to determine the merits of the plaintiffs' claims, which is not appropriate when reviewing a class certification order. The trial judge here had sufficient *material* before him (which need not necessarily be evidence) to determine the nature of the claims at issue. *National Gypsum Company v. Kirbyville Independent School District,* 770 S.W.2d 621, 626 (Tex.App.—Beaumont 1989, writ dism'd w.o.j.); *Brister,* 722 S.W.2d at 772. So long as his class certification order was properly based upon that material, his decision cannot be faulted simply because plaintiffs' proof may ultimately fail. *Blackie v. Barrack,* 524 F.2d 891, 901 (9th Cir.1975).

## CONCLUSION

We find no abuse of discretion in the trial court's conclusion that this lawsuit is certifiable as a class action. The order of the trial court is therefore affirmed.