Employers Casualty 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-672-CV





EMPLOYERS CASUALTY COMPANY; EMPLOYERS NATIONAL RISK
MANAGEMENT SERVICES, INC.; HAVIS WAYNE DORTCH; FOCUS HEALTHCARE
MANAGEMENT, INC.; GENESYS COST MANAGEMENT SYSTEMS, INC.; AND
CORPORATE SYSTEMS, LTD.,


 APPELLANTS


vs.





TEXAS ASSOCIATION OF SCHOOL BOARDS WORKERS' COMPENSATION SELF-INSURANCE FUND; EL PASO INDEPENDENT SCHOOL DISTRICT; IRVING
INDEPENDENT SCHOOL DISTRICT; HICO INDEPENDENT SCHOOL DISTRICT; AND
ARANSAS PASS INDEPENDENT SCHOOL DISTRICT,


 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT



NO. 92-02133-A, HONORABLE JERRY DELLANA, JUDGE PRESIDING



 




 This is an interlocutory appeal from a district court order granting class
certification. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(3) (West Supp. 1994). The Texas
Association of School Boards Workers' Compensation Self-Insurance Fund ("the Fund") and
several independent school districts, appellees, represent a class composed of the past and present
members of the Fund. The appellants, Employers Casualty Company, Employers National Risk
Management Services, Inc., Havis Wayne Dortch, Focus Healthcare Management, Inc.,
Corporate Systems, Ltd., and Genesys Cost Management Systems, Inc. (collectively "defendants")
raise seven points of error regarding standing, the certification hearing, and the requirements of
Texas Rule of Civil Procedure 42. We will affirm.



FACTUAL AND PROCEDURAL BACKGROUND


 Following a legislative mandate that independent school districts provide workers'
compensation benefits to their employees, the districts, acting through the Texas Association of
School Boards, created the Fund. Members of the Fund make annual contributions in exchange
for certain services, including payment of claims, administrative servicing, stop-loss insurance,
and risk management. In turn, the Fund enters into servicing agreements with third parties to
provide these specific services. Employers Casualty is one of these servicing agents. From 1974
through 1989, Employers Casualty provided stop-loss insurance protection to the Fund. From
September 1989 through February 1992, Employers Casualty was the primary servicing agent,
handling nearly 72,000 claims from the member districts. As the primary servicing agent,
Employers Casualty negotiated and contracted with Focus Healthcare Management, Inc.,
Corporate Systems, Ltd., and Genesys Cost Management Systems, Inc. (collectively "Focus") to
obtain medical cost containment services. (1)

 Following a 1991 audit, the Fund concluded that it was not receiving the services
for which it had contracted. The Fund and several individual school districts (2) filed suit against
defendants alleging various misrepresentation and breach-of-contract claims surrounding the
quality of their services and the mishandling of claims due to lack of investigation, pursuit of
subrogation, and cost containment. Additionally, the Fund and the districts alleged that Focus
failed to provide medical cost containment services to Employers Casualty, which in turn caused
the Fund and its members to pay higher medical costs.

 To resolve these allegations, the Fund and the districts sought certification of a
class representing all members of the Fund from 1974 to the present. Following a two-day
hearing in which the court considered testimony from eleven witnesses and examined more than
forty exhibits, the district court certified the class. In this appeal, defendants complain of a lack
of standing, deficiencies in the hearing, and failure to satisfy the prerequisites and maintenance
criteria of Rule 42.



STANDING


 As a threshold issue, defendants challenge the standing of the Fund and the districts
to bring this suit. (3) The general test for standing requires that there be a real controversy between
the parties that will actually be determined by the judicial declaration sought. Texas Ass'n of
Business v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). An organization may sue
individually or in a class suit for injuries and damages suffered directly by the organization. 
Texas Dep't of Mental Health & Mental Retardation v. Petty, 778 S.W.2d 156, 164 (Tex.
App.Austin 1989, writ dism'd w.o.j.); 1 Herbert B. Newberg & Alba Conte, Newberg on Class
Actions § 3.34, at 3-176 (3d ed. 1992).

 The Fund clearly has standing. The Fund alleges direct dealings with Employers
Casualty and direct injury from misrepresentations and overpayment. This meets the jurisdictional
standing requirement. Defendants mistakenly rely on the test for "associational standing"
announced in Texas Association of Business. 852 S.W.2d at 447. The business association in
Texas Association of Business had suffered no direct injury. It sought a declaratory judgment
solely on behalf of its members. 852 S.W.2d at 446. In contrast, the Fund alleges not only harm
to the member districts, but also direct harm to the Fund itself. Because the Fund asserts direct
injuries, it has standing in its own right; associational standing is irrelevant. Point of error one
is overruled.



STANDARD OF REVIEW


 Concluding that the Fund and the districts have standing, we review the order
granting class certification using an abuse-of-discretion standard. As appellants, defendants have
the burden of providing an appellate record sufficient to demonstrate error. In this case, the
district court's order contained conclusions of law, but findings of fact were neither requested nor
filed. While defendants were not required to request findings of fact in conjunction with this
interlocutory appeal, we have frequently admonished that the better practice is to request findings
of fact to aid the appellate court in reviewing the class certification decision. See, e.g., Petty, 778
S.W.2d at 160-61; Franklin v. Donoho, 774 S.W.2d 308, 311 (Tex. App.Austin 1989, no writ). 
In the absence of such findings, we presume the district court found every factual proposition
necessary to sustain the order, provided the proposition is raised by the pleadings, supported by
the record, and sustainable on any reasonable theory consistent with the evidence and applicable
law. Id. 



THE RULE 42 HEARING


 Independent of Employers Casualty, the Focus defendants raise additional points
of error concerning the hearing. First, they contend that the trial court abused its discretion by
considering "materials" other than competent evidence. We disagree. 

 Rule 42, like its federal counterpart, (4) is a procedural rule, not a matter of
substantive law. This underlying principle is important because the propriety of a class suit does
not depend on the merits of the litigation. See Clements, 800 S.W.2d at 951; National Gypsum
Co. v. Kirbyville Indep. Sch. Dist., 770 S.W.2d 621, 627 (Tex. App.Beaumont 1989, writ
dism'd w.o.j.); 2 Newberg § 7.27, at 7-88. Certification does not hinge on the resolution of
disputed facts, but on the court's appraisal of facts and circumstances in the context of this
procedural device. Under Rule 42, the district court must hold a hearing as soon as practicable
to determine if the action can be maintained as a class suit. Tex. R. Civ. P. 42(c)(1). The
purpose of the hearing is for the district court to satisfy itself that the claims of absent class
members can be aggregated with those of the class representatives. See Thomas A. Dickerson,
Class Actions: The Law of 50 States § 5.01, at 5-2 (1993). Thus, the entire focus is on the
characteristics of the class, not on the characteristics of the class opponents or the merits of the
allegations.

 Inherent in defendants' argument is an attempt to shift the examination from a
procedural context, focusing on the class, to one focusing on the merits. Specifically, they argue
that the district court can consider only admissible evidence in making its certification decision. 
While this Court has used the phrase "evidentiary hearing" to describe the hearing required by
Rule 42(c), (5) it is well settled that the district court can consider other materials, such as the
pleadings, in making its determination. See Vinson v. Texas Commerce Bank-Houston, 880
S.W.2d 820, 823 (Tex. App.Dallas 1994, no writ h.); Dresser Indus., Inc. v. Snell, 847 S.W.2d
367, 376 (Tex. App.El Paso 1993, no writ); Clements, 800 S.W.2d at 952; National Gypsum,
770 S.W.2d at 627; Brister, 722 S.W.2d at 772-73. This is particularly important since the rule
requires that the hearing be conducted at such an early stage in the litigation. It is unnecessary
for us to rigidly prescribe the contours of the Rule 42 hearing. Absent findings of fact, it is
sufficient that our review of the record reveals that the district court properly focused on the class
representatives and their relationship to the absent class members. These points of error are
overruled. (6)


 

CLASS ACTION PREREQUISITES AND MAINTENANCE


 Having described the nature of the Rule 42 hearing, we now consider whether the
district court abused its discretion in ordering class certification. Defendants challenge the district
court certification order on each of the four prerequisites of Rule 42(a). They also argue that
maintenance of the class is inappropriate under either Rule 42(b)(1)(B) or (b)(4). We discuss each
in turn.



A. RULE 42 PREREQUISITES

 Before a class can be maintained, the district court must satisfy itself that the class
meets the Rule 42 prerequisites: numerosity, commonality, typicality, and representativeness. See
Tex. R. Civ. P. 42(a). Defendants argue that the certified class fails to meet any of these criteria. 


 To satisfy the numerosity requirement, the district court must find "the class is so
numerous that joinder of all members is impracticable." Tex. R. Civ. P. 42(a)(1). There is no
mechanical rule for determining when class size reaches that threshold. See 1 Newberg § 3.03,
at 3-23 to 3-24. The district court certified a class of all past and present members of the Fund. 
This class has the potential to include over 1,000 member school districts. In addition, the
volume of claims handled by Employers Casualty approaches 72,000. Given the number of
school districts and the pool of claims, we conclude that the district court did not abuse its
discretion in determining that the class met the numerosity requirement. Point of error three is
overruled.

 The commonality requirement requires a determination that "there are questions
of law or fact common to the class." Tex. R. Civ. P. 42(a)(2). The rule does not require that all
or even most of the questions be common; it is sufficient that there are some common questions
of law or fact. Wente v. Georgia-Pacific Corp., 712 S.W.2d 253, 255 (Tex. App.Austin 1986,
no writ). The Fund and the districts allege twenty-two common questions of law and fact relating
to their relationship with the servicing agents. These common questions center around
representations made by Employers Casualty and the quality of services provided. Likewise, they
assert common questions concerning the representations and services provided by Focus to
Employers Casualty. Defendants argue that there are no common questions because liability and
damages will differ with each claim. They rely on our analysis in Wente, where we said that an
identical question posed to each class member is not a common question if it produces a multitude
of answers from the class members based upon their peculiar circumstances. Wente, 712 S.W.2d
at 257. In the present appeal, however, the common questions do not have different answers. 
Employers Casualty made misrepresentations, if at all, to the Fund. Likewise, if Focus made
misrepresentations, they did so to Employers Casualty. Neither made different representations
to each member district. Accordingly, the district court did not abuse its discretion in concluding
there were common questions of law or fact. Point of error four is overruled.

 Defendants also claim the class representatives fail to meet the typicality
prerequisite of Rule 42. Under this prong of the rule, the district court must find that "the claims
or defenses of the representative parties are typical of the claims or defenses of the class." Tex.
R. Civ. P. 42(a)(3). Typicality essentially requires that the class representatives have the same
interests and injury as the absent class members. See Dresser, 847 S.W.2d at 372. It does not
require that the claims be identical. Typicality is met if there is "a nexus between the injury
suffered by the representative and the injuries suffered by other members of the class." Id. As
we stressed at the outset, this issue, like all Rule 42 requirements, is resolved by comparing the
allegations of the class representatives with the rest of the class.

 Defendants try to shift the focus from the class to themselves. They argue that
typicality is absent because "no single Appellant in this lawsuit has acted in a way that affected
all of the Appellees similarly." This is simply the wrong inquiry. When the claims of the class
representatives are compared with the claims of the absent members, typicality is evident. The
class representatives note that there is only one set of promises by Employers Casualty to the
Fund. They allege that these misrepresentations rise to the level of a deceptive trade practice. 
If this is the case, the class representatives' claim is typical of the claims of all class members. 
Likewise, the Fund and the districts assert that Focus did not provide a twenty percent reduction
in their medical costs as promised to Employers Casualty. They allege that, as a result, each class
member paid more in medical expenses. If they can prove the merits of this claim, the class
representatives have the same breach of contract claim as the absent members. Additionally, it
is undisputed that the vast majority of school districts pooled their contributions in the Fund to
spread risks. In turn, they argue that if the servicing agents mishandled and overpaid claims, all
members of the Fund suffered. Consequently, even though some class representatives may not
be aware of mishandling of their specific claims, all have a claim against Employers Casualty
because the mishandling of other districts affected them. When the claims of the class
representatives are compared to those of the absent members, one could properly conclude
typicality was present. Point of error two is overruled.

 Defendants also challenge the district court's conclusion on representativeness. The
rule requires that the class representative must "fairly and adequately protect the interests of the
class." Tex. R. Civ. P. 42(a)(4). Representativeness embodies two separate concepts. First, the
interests of the class representatives must not be antagonistic to those of the rest of the class. In
this sense, this issue is often collapsed into the typicality analysis. See Petty, 778 S.W.2d at 161. 
A second aspect of representativeness centers on whether class counsel is sufficiently qualified and
experienced to vigorously prosecute the action. See 1 Newberg §  3.22, at 3-126. Defendants do
not challenge this aspect of representativeness. Rather, they argue that a potential conflict exists
between the interests of the school districts and those of the Fund. Defendants point to the
involvement of the Texas Association of School Boards in handling some of the administration. 
They speculate that member school districts might have claims of mismanagement against the
Fund itself. Further, they stress that the interrelationship between representatives of the Fund,
the Texas Association of School Boards, and specific school districts might cause conflict. 
Likewise, defendants argue that the interests of former members of the Fund might conflict with
those of the present membership. All of these contentions, however, are merely speculative. 
Such speculative claims concerning potential conflicts are insufficient to show the district court
abused its discretion in finding representativeness. See Dresser, 847 S.W.2d at 373-74. Even
if the district court later discovers these situations, it can redefine the class, create subclasses, or
even withdraw certification at any time before final judgment. See Tex. R. Civ. P. 42(c)(1). 
Point of error five is overruled. 



B. CLASS MAINTENANCE

 If the district court determines that all the prerequisites of class certification are
met, it must then decide if the class is maintainable under one or more of the categories described
in Rule 42(b). The district court found the class maintainable as either a (b)(1)(B) or (b)(4) class. 
Defendants contend the district court erred in concluding that the class could be maintained under
either classification.

 Rule 42(b)(4) provides for class maintenance if the "court finds that the questions
of law or fact common to the members of the class predominate over any questions affecting only
individual members, and that a class action is superior to other available methods for the fair and
efficient adjudication of the controversy." Tex. R. Civ. P. 42(b)(4). A (b)(4) class is best viewed
as an "efficiency class" in which the court, weighing various factors, determines whether the class
action vehicle is superior. See Brister, 722 S.W.2d at 771; see also Simon v. World Omni
Leasing, Inc., 146 F.R.D. 197, 202 (S.D. Ala. 1992). While the rule itself lists four separate
areas courts can consider in evaluating (b)(4) certification, (7) as a practical matter the focus is on
two main issues: predominance and superiority. See Walsh v. Ford Motor Co., 130 F.R.D. 260,
264 (D.D.C. 1990). 

 The test for predominance is not whether common issues outnumber individual
issues, but whether common issues will be the object of most of the efforts of the litigants and
court. Angeles/Quinoco Sec. Corp. v. Collison, 841 S.W.2d 511, 515 (Tex. App.Houston [14th
Dist.] 1992, no writ). As with their challenge to the commonality prerequisite, defendants
reiterate that individual issues surrounding individual claims will be the main focus of the
litigation. However, the district court considered the testimony and was satisfied that common
questions, such as the representations by Employers Casualty to the Fund and by Focus to
Employers Casualty, predominate over individual issues. In addition, the district court found the
class action was a superior method of litigating these disputed claims. Given the large number
of school districts and vast number of individual claims, this conclusion was not an abuse of the
trial court's discretion. Even if an assessment of damages cannot be achieved through the use of
statistical evidence as the Fund and the districts maintain, this should not defeat class certification
at this stage. The district court's decision that it was a more efficient use of judicial resources to
utilize a (b)(4) class is not an abuse of discretion. Point of error seven is overruled. (8)



THE FOCUS DEFENDANTS


 While it is clear that the district court did not abuse its discretion in certifying this
class action, we briefly address Focus's contention that the Fund must independently prove each
class prerequisite and maintenance criteria for each separate defendant. (9) This argument is
fundamentally flawed because it both asks the court to examine the merits of the cause of action
against each defendant and distracts from concentrating on the characteristics of the class. Simply
put, the focus is not on Focus. Rather, the district court acts properly when it examines the
characteristics of the class representatives in comparison with the absent class members. If Focus
believes that the class has no cause of action against it, the Texas Rules of Civil Procedure provide
mechanisms to resolve the issue quickly and efficiently. Through the use of special exceptions
and summary judgment, Focus can extricate itself from this litigation if no actionable claim exists. 
See Tex. R. Civ. P. 91, 166a. Decertification of the class, however, is not the appropriate
procedural tool. 

 Focus relies on Cedar Crest Funeral Home, Inc. v. Lashley, No. 05-93-00003-CV
(Tex. App.Dallas Nov. 29, 1993, no writ h.), and La Mar v. H. B. Novelty & Loan Co., 489 F.2d 461 (9th Cir. 1973), for the proposition that individual proof must be offered for each
defendant. These cases are distinguishable. In Cedar Crest, the plaintiffs tried to represent a
class of families against several funeral homes that had arranged for a mortuary college to teach
embalming on the dead without the knowledge or consent of the families of the deceased. The
parties stipulated that each named plaintiff had dealt with only one funeral home. No class
representative had claims against all the defendants. The court of appeals reversed the district
court's certification order because "[a] plaintiff cannot represent those having causes of action
against other defendants against whom the plaintiff has no cause of action and from whose hands
he suffered no injury." Cedar Crest, slip op. at 11. Likewise in La Mar, the Ninth Circuit
reversed an order granting certification to a class of pawn shop customers against various pawn
brokers. The class representative had dealings with only one pawn broker. The court held that
a plaintiff who had dealt with only one defendant could not represent those having claims against
other defendants. La Mar, 489 F.2d at 462. The situation in Cedar Crest and La Mar is not
present here. The class representatives in this action have asserted claims against all defendants. 
Further, the claims concerning medical cost containment are identical for each class member. 
Under these circumstances, the district court did not abuse its discretion in rejecting Focus's
contention that certification was inappropriate. Focus's points of error are overruled.



CONCLUSION


 With the exception of defendants' points of error concerning the appropriateness
of maintenance as a (b)(1)(B) class, which we do not address, we overrule all defendants' points
of error and affirm the trial court's order granting class certification.



 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd

Affirmed

Filed: October 12, 1994

Publish
1. [1] The Fund alleges that Employers Casualty negotiated with Corporate Systems, Ltd. and
Focus Healthcare Management, Inc. These negotiations culminated in the creation of Genesys
Cost Management Systems, Inc. Employers Casualty ultimately contracted with Genesys for
medical cost containment services.
2. [2] These school districts are: Aransas Pass Independent School District, El Paso
Independent School District, Hico Independent School District, and Irving Independent School
District.
3. [3]  The issue of standing also implicates the "typicality" and "representativeness"
prerequisites of Rule 42(a)(3) and (4). See Clements v. LULAC, 800 S.W.2d 948, 951 (Tex.
App.Corpus Christi 1990, no writ); Texas Dep't of Mental Health & Mental Retardation v.
Petty, 778 S.W.2d 156, 164 (Tex. App.Austin 1989, writ dism'd w.o.j.). We consider these
issues separately below.
4. [4] Since Tex. R. Civ. P. 42 is patterned after the federal class action rule, Fed. R. Civ. P.
23, federal decisions and authorities interpreting Rule 23 are persuasive in interpreting the
Texas class action rule. Life Ins. Co. of the Southwest v. Brister, 722 S.W.2d 764, 770 (Tex.
App.Fort Worth 1986, no writ); RSR Corp. v. Hayes, 673 S.W.2d 928, 931-32 (Tex.
App.Dallas 1984, writ dism'd).
5. [5] See, e.g., Petty, 778 S.W.2d at 159; Franklin, 774 S.W.2d at 310.
6. [6] In addition, Focus claims that if consideration of materials is acceptable at the
certification hearing, there was either "no evidence" or "insufficient evidence" to support the
certification order. This is precisely the type of argument on the merits that is inappropriate at
this stage. See Dresser, 847 S.W.2d at 376. These points of error are also overruled.
7. [7] "The matters pertinent to the findings include: (A) the interest of members of the class in
individually controlling the prosecution or defense of separate actions; (B) the extent and
nature of any litigation concerning the controversy already commenced by or against members
of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in
the particular forum; (D) the difficulties likely to be encountered in the management of a class
action." Tex. R. Civ. P. 42(b)(4).
8. [8] Since we determine that the district court did not abuse its discretion in certifying the
class under Rule 42(b)(4), we need not address defendants' points of error concerning the
appropriateness of maintenance as a (b)(1)(B) class.
9. [9] Appellant Corporate Systems Ltd. also argues that the Fund and the districts failed to
plead the elements of Rule 42 against it. This point is meritless. In their motion for class
action certification, the Fund and the districts incorporated by reference plaintiff's sixth
amended original petition. This pleading alleges the elements of Rule 42 against Corporate
Systems. This point of error is overruled.