TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-93-00431-CV






Rainbow Group, Ltd. and Alan Sager, Appellants



v.



Josephine Johnson, Jennifer Casey, Seantel Wilmes and Ava Lott, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 53RD JUDICIAL DISTRICT


NO. 92-02221, HONORABLE F. SCOTT MCCOWN, JUDGE PRESIDING







 Appellants, Rainbow Group, Ltd. and Alan Sager (collectively, "Rainbow Group"),
bring this interlocutory appeal of an order certifying a class, represented by Josephine Johnson and
others, of former and current hairstylists employed by Rainbow Group at the company's Supercuts
stores. Class members allege that Rainbow Group breached the hairstylists' oral employment
contracts by preventing them from clocking in during hours for which they were scheduled to
work and refusing to pay them for attendance at mandatory store meetings. In six points of error,
Rainbow Group charges the trial court with abuse of its discretion in (1) finding that the class is
so numerous that joinder of all individual members is impracticable; (2) finding the required
commonality necessary for maintenance of a class; (3) finding that the claims of the representative
parties are typical of the claims of the class; (4) finding the named parties to be adequate
representatives of the class; (5) finding that common questions of fact and law predominate; and
(6) finding class certification to be a superior method of adjudicating the controversy. We will
affirm the order of the trial court.


BACKGROUND



 The underlying cause of action involves Rainbow Group's alleged breach of the
employment contracts held by current and former hairstylists employed at Rainbow Group's
Supercuts stores. (1)
 Rainbow Group owns and operates a chain of hair care salons in several cities
in Texas, including Abilene, Austin, San Angelo, and Tyler. Members of the hairstylist class
claim that Rainbow Group failed to pay for all hours hairstylists were scheduled for work and
required to be on the premises. In particular, the class members complain that (1) they were often
prevented from "clocking in" at their scheduled work times if the stores were not sufficiently
busy; and (2) they were not paid for attendance at mandatory employee meetings.

 All hairstylists were employed on an at-will basis under individual, oral
employment contracts. Although Rainbow Group did not provide a standard written employment
contract, Supercuts had one employee manual, one employee orientation form and one set of
employment policies applicable to all hairstylists. The Supercuts employee manual refers to
Rainbow Group's clocking-in policy as follows:


Time Cards


Clocking in and Out is Mandatory!



Time cards are used as a means of accurately recording hours worked and
calculating pay. They record regular hours worked, meal periods, overtime,
absences, vacations and tips. Accordingly, employees should record the time they
begin and end each work day, the beginning and end of each meal period, and the
beginning and end of any split shift.



 The dispute between Rainbow Group and the hairstylists involves alleged
underpayment during 1988 and subsequent years. Members of the hairstylist class contend that
store managers systematically refused to allow hairstylists to clock in at the beginning of their
scheduled shifts, or after they had returned from lunch if there were not enough customers in the
store. They allege that hairstylists had to wait on the premises, off the clock, until there were
enough customers desiring hair cuts to justify paying the hairstylists' wages. The named plaintiffs,
as well as the class as a whole, include hairstylists who sometimes acted as shift managers. Class
members allege that they are entitled to compensation for the hours they were "held off the clock"
and for hours they attended mandatory store meetings and were not paid.

 Rainbow Group denies that there existed a policy to hold hairstylists off the clock
and asserts that its policy was to pay hairstylists for attending all mandatory meetings.

 Class members further contend that all employment contracts in Texas contain
implicit requirements based upon the Fair Labor Standards Act, (2)
 including the requirement that
employees be paid for all hours they are required to be at work. Rainbow Group responds that 
the claims of the class must be based solely on Texas contract law or else the claims are removable
to federal court. (3) The class contends that jurisdiction is proper because FLSA regulations are
incorporated into Texas work contracts as a matter of law.

 In June 1993, the trial court conducted a hearing to consider the hairstylists' motion
to certify as a class all hairstylists employed by Rainbow Group since February 20, 1988. After
hearing argument from both sides, the trial court certified the class. Rainbow Group brings this
interlocutory appeal from the trial court's order certifying the class. (4)


REQUIREMENTS OF CLASS CERTIFICATION


 The plaintiffs have the burden of establishing their right to maintain an action as
a class action, but an extensive evidentiary showing in support of a motion for class certification
is generally not required. Morgan v. Deere Credit, Inc., 889 S.W.2d 360, 365 (Tex.
App.--Houston [14th Dist.] 1994, no writ). Texas law favors class certification because a
certified class may be amended or decertified at a later stage of the proceedings. Id. Texas Rule
of Civil Procedure 42(a) sets out the following prerequisites for certification of a class action:


(1) the class is so numerous that joinder of all members is impracticable
numerosity];


(2) there are questions of law or fact common to the class [commonality];


(3) the claims or defenses of class representatives are typical of the claims or
defenses of the class [typicality]; and


(4) class representatives will fairly and adequately protect the interests of the class
[adequacy of representation].



Tex. R. Civ. P. 42(a).

 An action may be maintained as a class action if the plaintiff establishes the four
prerequisites of Rule 42(a), and proves at least one of the criteria for class maintenance in Rule
42(b). See Tex. R. Civ. P. 42(b); see also Forsyth v. Lake LBJ Inv. Corp., 903 S.W.2d 146, 149
(Tex. App.--Austin 1995, writ dism'd w.o.j.). The trial court certified this class under Rule
42(b)(4), finding "that the questions of law or fact common to the members of the class
predominate over any questions affecting only individual members [predominance], and that a
class action is superior to other available methods for the fair and efficient adjudication of the
controversy [superiority]." See Tex. R. Civ. P. 42(b)(4).

 The trial court found that the hairstylists met all the requirements of Rule 42(a). 
Moreover, the trial court found that the class also met the requirements of Rule 42(b)(4). 
Consequently, the trial court certified the class. Rainbow Group challenges the trial court's
findings on each requirement of Rules 42(a) and 42(b)(4). We will address each of these criteria
in turn.


STANDARD OF REVIEW

 Our review of this cause is limited to a determination of whether the trial court
abused its discretion in certifying the class. See Hutchins v. Grace Tabernacle United Pentecostal
Church, 804 S.W.2d 598, 601 (Tex. App.--Houston [1st Dist.] 1991, no writ). A trial court has
broad discretion in determining whether to grant or deny class certification, and an appellate court
must not substitute its judgment for that of the trial court. American Express Travel Related Servs.
Co. v. Walton, 883 S.W.2d 703, 707 (Tex. App.--Dallas 1994, no writ). Even if a trial court
determines an issue differently than would an appellate court, the ruling does not necessarily
constitute an abuse of discretion. Dresser Indus., Inc. v. Snell, 847 S.W.2d 367, 371 (Tex.
App.--El Paso 1993, no writ) (citing Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238,
242 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986); see also Vinson v. Texas Commerce Bank, 
880 S.W.2d 820, 824 (Tex. App.--Dallas 1994, no writ). In determining whether a matter should
be litigated as a class action, a trial court abuses its discretion if its decision is arbitrary,
unreasonable or without reference to any guiding principles. Dresser Indus., 847 S.W.2d at 371. 
A trial court may also abuse its discretion by failing to apply the law to undisputed facts, but does
not abuse its discretion if it bases its decision on conflicting facts. Vinson, 880 S.W.2d at 823.

 In making its class certification decision, the trial court can consider the pleadings
and other material in the record, along with any evidence presented at the hearing. Employers
Cas. Co. v. Texas Ass'n of Sch. Bds. Workers' Compensation Self-Ins. Fund, 886 S.W.2d 470,
474 (Tex. App.--Austin 1994, writ dism'd w.o.j.). We view the evidence in the light most
favorable to the trial court's action, entertaining every presumption that favors its judgment. 
Vinson, 880 S.W.2d at 823; see also Texas Dep't of Mental Health & Mental Retardation v. Petty,
778 S.W.2d 156, 160-61 (Tex. App.--Austin 1989, writ dism'd w.o.j); Brittian v. General Tel.,
533 S.W.2d 886, 889 (Tex. Civ. App.--Fort Worth 1976, writ dism'd) (citing Richardson v.
Kelly, 191 S.W.2d 857 (Tex. 1945)).


DISCUSSION

Numerosity

 In its first point of error, Rainbow Group contends that the trial court abused its
discretion in certifying the hairstylists as a class because the class is not made up of sufficient
numbers to require class certification. Rainbow Group specifically disagrees with the court's
finding that the class consists of at least 400 current and former hairstylists. They argue that the
total number of hairstylists employed is not determinative of the number affected and hence,
eligible for inclusion in the class. Rainbow Group contends that actual complaints from
hairstylists arose from only a few stores. Additionally, Rainbow Group notes that 87 hairstylists
signed affidavits indicating that they did not want to be involved in the present lawsuit.

 Numerosity is not based on numbers alone. See Union Pacific Resources Co. v.
Chilek, 966 S.W.2d 117, 120 (Tex. App.--Austin 1998, pet. dism'd w.o.j.). Rather, the test is
whether joinder of all members is practicable in view of the size of the class and includes such
factors as judicial economy, the nature of the action, geographical location of class members, and
the likelihood that class members would be unable to prosecute individual lawsuits. Id. 
Additionally, since class certification is not based on the merits of members' claims, proponents
are not required to establish a prime facie case for class certification. Id. Numerosity can
therefore be established by the number of potential class members, not those proven to have been
affected.

 The trial court concluded that the hairstylist class consisted of at least 400 current
and former hairstylists employed by Rainbow Group, and found the 87 affidavits to be legally
irrelevant to the issue of numerosity. (5) Even excluding those 87 hairstylists, the trial court found
that the number and geographic dispersion of the remaining class members would make joinder
impracticable. Rainbow Group employed hairstylists in twelve stores throughout Texas. Given
the number and geographical dispersal of current and former hairstylists employed by Rainbow
Group, the trial court did not abuse its discretion in determining that joinder of all members would
be impracticable. Therefore, Rainbow Group's first point of error is overruled.


Commonality

 In its second point of error, Rainbow Group challenges the trial court's finding of 
commonality--that questions of law and fact exist that are common to the class. Rainbow Group
contends that because each hairstylist was employed under an individual oral contract, the elements
of each contract differ and must be proven separately. Rainbow Group further contends that the
individual hairstylists had different expectations regarding the number of hours each would
work and how each would be compensated. Finally, Rainbow Group argues that, by cashing their
paychecks and continuing to work for Rainbow Group, each hairstylist acceded to Rainbow
Group's "objectionable practices" and accepted a modified oral employment contract. To prove
such acceptance, Rainbow Group contends it must show that each hairstylist had actual knowledge
of the modified terms. As a result, Rainbow Group argues that the employment contracts are not
common to each class member.

 Rule 42(a)(2) does not require that all, or even a substantial portion, of the legal
and factual questions be common to the class. Dresser Indus., 847 S.W.2d at 372. It requires
only that some legal or factual questions be common to the class. Reserve Life Ins. Co. v.
Kirkland, 917 S.W.2d 836, 842 (Tex. App.--Houston [14th Dist.] 1996, no writ).

 The trial court found that, although hairstylists were employed under individual oral
contracts, the terms of employment presented fact questions common to the class. Rainbow Group
maintained one employee manual, one employee orientation form, and one set of employment
policies for use in all of its stores. Moreover, the disputed fact issue of whether Rainbow Group
had a policy of holding hairstylists off the clock or refusing to pay hairstylists for mandatory
meetings applies commonly to all class members. The trial court also found questions of law
common to the class, including whether holding hairstylists off the clock violated the work
contracts under which the hairstylists were employed and whether hairstylists were entitled to their
regular hourly rate of pay for the hours they were attending mandatory meetings.

 Rainbow Group's affirmative defenses also raised common issues, including
whether hairstylists were required to exhaust company grievance procedures before filing suit and 
whether the individual employment contracts were modified by accepting paychecks or continuing
to work for Rainbow Group. These issues are sufficient to support the trial court's finding of
commonality. Rainbow Group's second point of error is overruled.


Typicality

 In its third point of error, Rainbow Group contends that the trial court abused its
discretion in certifying the class because the claims and defenses of named hairstylists are not
typical of the claims and defenses of the class as a whole. Specifically, Rainbow Group asserts
that typicality is destroyed by including in the class of hairstylists those hairstylists who functioned
from time to time as shift managers. Rainbow Group contends that since these hairstylist/shift
managers are willing to testify that as employer representatives they also kept employees under
their control off the clock, these hairstylist/shift managers have a conflict of interest which sets
them at odds with other members of the class.

 The United States Supreme Court has held that the typicality requirement mandates
that the representative "possess the same interests and suffer the same injury." Dresser Indus.,
847 S.W.2d at 373 (citing East Texas Motor Freight Sys., Inc, v. Rodriguez, 431 U.S. 395, 403
(1977)). Although it is not necessary that the named representative suffer precisely the same
injury as other class members, there must be a nexus between the injury suffered by the
representative and the injuries suffered by other members of the class. Id.

 The trial court found questions of law and fact common to the class, and concluded
that the named hairstylists' injuries were typical despite variations in hiring dates, pay rates, and
the status of some named hairstylists as shift managers. All named hairstylists accuse Rainbow
Group of holding them off the clock, even those hairstylists/shift managers who admit to
participating in the practice when they were functioning as members of Rainbow Group's
management.

 Additionally, the trial court properly found that it should err in favor of certifying
a class since the class may be modified or decertified should later developments during the course
of discovery or the trial so require. Life Ins. Co. of Southwest v. Brister, 722 S.W.2d 764, 774-75
(Tex. App.--Fort Worth 1986, no writ). If a conflict should arise, the trial court can decertify
the class, create a subclass, remove those hairstylists who also served as shift managers, or replace
the named plaintiffs with others more typical of the class as a whole. We cannot conclude that the
trial court abused its discretion in certifying the class given the trial court's continuing ability to
monitor the class and to modify it should the need arise. Rainbow Group's third point of error
is overruled.


Adequacy of Representation

 In its fourth point of error, Rainbow Group challenges the trial court's finding that
the class representatives will fairly and adequately represent the interests of the entire class. 
Rainbow Group claims that the hairstylists' interests conflict with the interests of class
representatives who admit to holding other hairstylists off the clock, thereby precluding the latter
from serving as class representatives. Additionally, Rainbow Group claims that three of the four
named hairstylists have considered settling the case, which disqualifies them as class
representatives. Finally, Rainbow Group asserts that the hairstylists' attorney, by his agreement
to indemnify the class for the costs of litigation, has a direct economic interest in the litigation 
which conflicts with the economic interests of the class.

 In determining the adequacy requirement, the trial court must inquire into the zeal
and competence of class counsel and into the willingness and ability of the representatives to take 
an active role in and control the litigation, and to protect the interests of the absentees. Adams v.
Reagan, 791 S.W.2d 284, 291 (Tex. App.--Fort Worth 1990, no writ). The primary issue to be
considered is whether conflict or antagonism exists between the interests of the representatives and
those of the remainder of the class. Id. However, only a conflict that goes to the very subject
matter of the litigation will defeat a party's claim of representative status. Id.

 The trial court found that the named hairstylists understand the nature of their
claims and are ready, willing and able to represent the interests of the class members. The class
representatives have demonstrated their willingness to prosecute the class claims through their
testimony and six-year commitment to the cause. The trial court found no conflicts between the
named hairstylists and the class members. Class representatives and all class members seek
reimbursement from Rainbow Group for hours they were held off the clock. The hairstylists who
acted as shift managers, although they admit holding other hairstylists off the clock, testified that
they did not do so of their own initiative but on the express direction of shop managers or other
Rainbow Group officials. We reiterate that the trial court enjoys discretion to modify or decertify
the class should conflicts of interest arise later in the proceedings. Brister, 722 S.W.2d at 774-75. 
Additionally, approval of a class action settlement lies within the sound discretion of the trial
court. General Motors Corp. v. Bloyed, 916 S.W.2d 949 (Tex. 1996). Therefore, the trial court
can protect absent class members from inequitable settlements.

 The trial court also determined class counsel to be experienced in class action
litigation and capable of representing the class. The trial court found no conflict of interest
between counsel and the class. We do not find that the trial court abused its discretion in
determining that class members are fairly and adequately represented. Rainbow Group's fourth
point of error is overruled.

 The trial court did not abuse its discretion in finding that the elements of Rule 42
(a) for class certification are satisfied. Having satisfied the prerequisites of Rule 42(a), a class
must seek certification under one of the grounds listed in 42(b). See Tex. R. Civ. P. 42(b); see
also Forsyth, 903 S.W.2d at 149. The trial court certified this class under Rule 42(b)(4), holding
that common questions of law or fact predominate over questions affecting individual members,
and that a class action is superior to other available methods of adjudicating the controversy. 
Rainbow Group challenges the trial court's findings of predominance and superiority in its final
two points of error.


Predominance

 In its fifth point of error, Rainbow Group contends that common questions of law
or fact do not predominate over questions affecting individual class members. Although the
meaning of "predominate" is not clear under the terms of 42(b)(4), the case law requires that the
existence of common questions in a claim is not in itself sufficient for class certification and the
court has a duty to evaluate the relationship between the common and individual issues in each
case to be certified under this subsection. Brister, 722 S.W.2d at 772. The test for the courts in
evaluating the predominance issue is not whether the common issues outnumber the individual
issues, but instead whether common or individual issues will be the object of most of the efforts
of the litigants and the court. Id.

 Rainbow Group argues that the substantive issues in the case are (1) whether a
contract existed between Rainbow Group and each individual hairstylist, (2) the individual terms
of each alleged contract, and (3) the occurrence and extent of any breach. The trial court
determined that Rainbow Group employed all hairstylists under oral contracts and regulated
hairstylists' conduct with one set of employment policies contained in one common employee
manual. Breach of the contracts will be determined by whether Rainbow Group had a policy or
custom of holding hairstylists off the clock or refusing to pay them for mandatory meetings. The
trial court found that these common issues predominate and their resolution will control the
outcome of the litigation. Moreover, in cases in which it appears that common issues may
predominate over individual issues, the most efficient approach for the trial court is to certify the
class, and, if necessary after the case has developed, to dissolve or modify the class if common
questions do not predominate at trial. See id; see also Kirkland, 917 S.W.2d at 843; Dresser
Indus., 847 S.W.2d at 375. Therefore, we will not disturb the trial court's discretionary findings
on predominance. Rainbow Group's fifth point of error is overruled.


Superiority

 In its sixth point of error, Rainbow Group disputes that class action is the superior
method of adjudicating this controversy. Rainbow Group argues that individual joinder is
practicable because existing allegations are geographically confined and limited in number, and
there is no indication of how many other hairstylists will choose to opt into the class.

 Repeated litigation of common issues in individual actions is "grossly inefficient,
costly and a waste of judicial resources." Adams, 791 S.W.2d at 292. In determining whether 
a class action is superior to other available methods, the trial court should consider what other
procedures exist for disposing of the dispute and compare those to the judicial resources and
potential prejudice to absent class members involved in pursuing the class action. Brister, 722
S.W.2d at 772. The trial court determined class certification to be superior to other methods of
adjudication. We agree. The testimony of many hairstylists will be necessary for the class to
establish Rainbow Group's custom of holding hairstylists off the clock and for Rainbow Group
to defend against that claim. Doing this once will prevent wasting judicial resources. 
Additionally, individual claims are small, so individual actions would be prohibitively expensive. 
Rainbow Group notes that hairstylists may file pay disputes individually with the Texas
Employment Commission. (6)
 However, this option for hairstylists is not mandatory, and there is
no indication that such a resolution would be more efficient than a single trial to adjudicate all
disputes. The trial court did not abuse its discretion. Rainbow Group's sixth point of error is
overruled.


CONCLUSION

 Having concluded the trial court did not abuse its discretion in finding numerosity,
commonality, typicality, adequacy of representation, predominance, and superiority, we affirm
the certification of the class.



 

 Mack Kidd, Justice

Before Justices Kidd, Patterson and Powers*

Affirmed

Filed: March 4, 1999

Do Not Publish Released for publication May 6, 1999. Tex. R. App. P. 47.3(c).









* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Rainbow Group owns and operates a chain of hair care salons under the name "Supercuts." 
For convenience, we will refer to the stores collectively as "Rainbow Group."

2. See 29 U.S.C. §§ 201-219 (West 1998).

3. Based on the hairstylists' second amended pleadings, which included the assertion that
Rainbow Group violated the Fair Labor Standards Act, Rainbow Group removed to federal court
in September 1993. The federal magistrate certified the class and conducted a trial on the merits. 
The magistrate entered judgment for Rainbow Group; the class members appealed. In February
1997, the Fifth Circuit Court of Appeals vacated the judgment based upon improper removal to
federal court and remanded the cause to state court.
4. Although Rainbow Group appealed class certification to this Court in 1993, proceedings
were stayed once the cause was removed to federal court. After the federal magistrate's judgment
was vacated and the cause was remanded to state court, Rainbow Group revived its interlocutory
appeal.
5. The trial court noted in its findings of fact that there existed evidence that the hairstylists
who were asked to sign these affidavits feared professional consequences of not signing.
6. See Tex. Lab. Code Ann.§§ 61.001-.095 (West 1996).




b the trial court's discretionary findings
on predominance. Rainbow Group's fifth point of error is overruled.


Superiority

 In its sixth point of error, Rainbow Group disputes that class action is the superior
method of adjudicating this controversy. Rainbow Group argues that individual joinder is
practicable because existing allegations are geographically confined and limited in number, and
there is no indication of how many other hairstylists will choose to opt into the class.

 Repeated litigation of common issues in individual actions is "grossly inefficient,
costly and a waste of judicial resources." Adams, 791 S.W.2d at 292. In determining whether 
a class action is superior to other available methods, the trial court should consider what other
procedures exist for disposing of the dispute and compare those to the judicial resources and
potential prejudice to absent class members involved in pursuing the class action. Brister, 722
S.W.2d at 772. The trial court determined class certification to be superior to other methods of
adjudication. We agree. The testimony of many hairstylists will be necessary for the class to
establish Rainbow Group's custom of holding hairstylists off the clock and for Rainbow Group
to defend against that claim. Doing this once will prevent wasting judicial resources. 
Additionally, individual claims are small, so individual actions would be prohibitively expensive. 
Rainbow Group notes that hairstylists may file pay disputes individually with the Texas
Employment Commission. (6)
 However, this option for hairstylists is not mandatory, and there is
no indication that such a resolution would be more efficient than a single trial to adjudicate all
disputes. The trial court did not abuse its discretion. Rainbow Group's sixth point of error is
overruled.


CONCLUSION

 Having concluded the trial court did not abuse its discretion in finding numerosity,
commonality, typicality, adequacy of representation, predominance, and superiority, we affirm
the certification of the class.



 

 Mack Kidd, Justice

Before Justices Kidd, Patterson and Powers*

Affirmed

Filed: March 4, 1999

Do Not Publish Released for publication May 6, 1999. Tex. R. App. P. 47.3(c).









* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Rainbow Group owns and operates a chain of hair care salons under the name "Supercuts." 
For convenience, we will refer to the stores collectively as "Rainbow Group."

2. See 29 U.S.C. §§ 201-219 (West 1998).

3. Based on the hairstylists' second amended pleadings, which included the assertion that
Rainbow Group violated the Fair Labor Standards Act, Rainbow Group removed to federal court