**PHILADELPHIA AMERICAN LIFE INSURANCE COMPANY,**
Appellant

v.

**Billy "Rex" TURNER, Appellee.**

**No. 2–03–165–CV.**

Court of Appeals of Texas,
Fort Worth.

March 4, 2004.

---

Weil, Gotshal & Manges, L.L.P., Gregory S. Coleman, Christian J. Ward, Austin, Shannon, Gracey, Ratliff & Miller, L.L.P., Robert L. Harris, Dallas, for appellant.

Fee, Smith, Sharp & Vitullo, Rebecca E. Bell, Anthony L. Vitullo, Dallas, for appellee.

PANEL B: DAUPHINOT, HOLMAN, and McCOY, JJ.

## OPINION

DIXON W. HOLMAN, Justice.

In this interlocutory appeal, Appellant Philadelphia American Life Insurance Company (PALIC) appeals the trial court's class certification order entered in favor of Appellee Billy "Rex" Turner. We reverse and remand.

---

1. Appellant's administrative fee increased from $7.50 to $8.50 in 1999, and then to

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant is a company that sells group health insurance in at least eighteen states throughout the United States. Two of its group policies are at issue in this case. The first is a major medical expense certificate of insurance policy, form H–0055P ("55P"). The second is a hospital medical-surgical expense certificate policy, form H–0070P ("70P"). Appellant sold both policies in Alabama, Arkansas, Arizona, Georgia, Illinois, Indiana, Missouri, Mississippi, Nevada, North Carolina, Ohio, Oklahoma, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, and West Virginia.

Appellee purchased the major medical insurance policy form 55P from Appellant in May 1999 through the Small Business Association of America and has been continuously covered under the policy through at least the day of his testimony at the class certification hearing on November 6, 2002. Appellant charged Appellee on a monthly basis, for a premium as well as an administrative fee.[1]

On the first page of Appellee's application for coverage under the 55P policy, there is a section that lists the types of fees with blanks left for the actual amount, if any, for the fees. The fee section on Appellee's application lists the following fee descriptions and amounts:

$12.50 in 2000.

Base Plan Premium _____ / σ 3 ^L

Rider _____ for _____

Rider _____ for _____

Rate-up % _____ on _____

Rate-up % _____ on _____

x Modal Factor _____ 1 _____

Life Rider _____

+ Enrollment Fees _____ 5 σ ᵘᵒ

+ Administrative Fee _____ 7 ˢᵘ

_____ / D ‾

= Total Amount Collected _ 2 2 3 ¹L

Appellee signed the application and executed an authorization allowing Appellant to electronically withdraw a premium in the amount of $173.16 directly from his bank account on a monthly basis.[2]

Appellee received a certificate of coverage (Certificate) from Appellant, which states:

> Entire Contract; Changes: The entire contract will consist of: 1. the Group Policy, the application of the Group Policyholder, which will be attached to the Group Policy; and 2. any enrollment applications of the proposed Insured individuals, including Your own.

The Certificate included a schedule of benefits, which provided that Appellant's coverage encompassed a $500,000 maximum benefit for each injury or sickness and a $5,000,000 lifetime maximum benefit. In addition to the various coverage limits and copay requirements, the schedule lists the "initial premium" as $173.16 and indicates that it will be paid by a monthly bank draft.

The Certificate contains a non renewal provision, which states:

> We can only terminate the Policy upon 90 days written notice if We offer the Policyholder coverage, on a guaranteed issue basis, under any policy which We are currently marketing or upon 180 days notice if We terminate all of Our policies in the state of delivery.

The Certificate states that if coverage terminates, the policyholder is entitled to conversion or continuation under the group policy as long as he was continuously insured under the group policy for at least three consecutive months prior to termination and the Certificate was not terminated involuntarily for cause, such as fraud or failure to pay the required premium. The Certificate offers two conversion options and one continuation option:

> Option 1: A conversion policy providing similar coverage and benefits as provided under the Group Policy.
>
> Option 2: A conversion policy with less[e]r coverage and benefits.
>
> Option 3: Continuation of coverage under the Group Policy.

On December 31, 2001, Appellant sent all Texas 55P policyholders, including Appellee, a notice terminating the group policy, effective on the first monthly premium

**2.** $173.16 equals the "Total Amount Collected" ($223.16) less "Enrollment Fees" ($50.00).

renewal date after April 5, 2002. The letter offered Texas 55P policyholders a certificate under the "only" available plan in Texas at the time. The plan provided limited benefit coverage with a $10,000 calendar year maximum benefit and a $50,000 lifetime maximum benefit. For more comprehensive coverage, the letter encouraged Texas 55P policyholders to contact an agent for assistance through another carrier.

Appellee filed suit on March 5, 2002, along with a request for class certification, alleging that Appellant breached the insurance contract by charging him, and other 55P and 70P policyholders, a monthly administrative fee not authorized by the insurance contract.[3] Although Appellee testified that he paid $173.16 a month and $173.16 was the amount of his premium, he argues that the $7.50 monthly administrative fee included in his payment was not authorized by the contract because he agreed to pay only a monthly premium, and not administrative fees. Appellee, seeking injunctive relief, additionally asserted that the non renewal of the 55P policy was not in compliance with his interpretation of the policy. Appellee claimed that Appellant's attempt to cancel the Certificate constituted a breach of the terms of the insurance contract for two reasons. First, Appellee asserted that Appellant was required to provide a 180–day notice of cancellation because a 90–day notice was allowed under the contract only if Appellant offered alternative coverage under any policy that it currently marketed in Texas. Second, Appellee claimed that instead of offering a conversion policy with similar coverage and benefits as required by the contract, Appellant offered a "substantially inferior product" as the only replacement option.

On March 11, six days after Appellee filed suit, Appellant sent another letter to all Texas 55P policyholders offering an additional plan that covered eligible medical expenses after either a $5,000 or $10,000 calendar year deductible up to a lifetime maximum benefit of $1 million. With respect to Appellee's request for injunctive relief, the parties reached an agreement, and the trial court entered an "Agreed Order for Injunction" on April 5, 2002, enjoining Appellant from cancelling all Texas 55P certificates for a period of six months. Appellant then filed an application to withdraw from writing association coverage insurance with the Texas Department of Insurance (TDI) along with a withdrawal plan on May 24, 2002. Appellant's withdrawal plan was approved by the TDI on June 27, 2002.

On July 1, 2002, Appellant sent another letter to the Texas 55P policyholders announcing that it was exiting the association group accident and health insurance market and therefore terminating coverage under 55P policies, effective January 1, 2003. The letter offered three conversion policies: a standard conversion policy, a basic conversion policy, and a $5,000 deductible conversion policy.

On October 24 and 25, 2002, the trial court held a hearing on Appellee's request for a second injunction as well Appellant's plea to the jurisdiction, motion to dismiss, and motion for summary judgment. The trial court ruled that the TDI has jurisdiction over Appellant's withdrawal plan and denied Appellee's request for a second injunction as well as Appellant's motion to

---

**3.** Appellee's original petition sought claims for 1) breach of contract, 2) violations of article 21.21 of the Texas Insurance Code, 3) conversion, and 4) breach of the duty of good faith and fair dealing. All claims except the breach of contract claim were dropped in Appellee's eighth amended petition, filed on the morning of the class certification hearing.

dismiss and motion for summary judgment.

After a one-day class certification hearing on November 6, 2002, the trial court certified two separate classes. The trial court's order certifying the class action included findings of fact, conclusions of law, and a trial plan. The first class identified in the order, the Administrative Fee Class, is a multi-state class limited to Appellee's breach of contract claim for Appellant's alleged improper inclusion of an administrative fee as part of the monthly premiums paid on the 55P and 70P policies.[4] The second class, the First Improper Cancellation Class (Cancellation Class), is a class of Texas 55P policyholders seeking only attorneys' fees for the agreed temporary injunction. The sole common question of fact identified by the court for the Cancellation Class is a determination of what constitutes a reasonable and necessary attorney fee. Appellant brought this interlocutory appeal seeking to reverse the certification order for both classes.

## II. STANDARD OF REVIEW

A class certification decision under Texas Rule of Civil Procedure 42 is reviewed for abuse of discretion. *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 691 (Tex.2002). A trial court abuses its discretion when it: (1) does not properly apply the law to the undisputed facts; (2) acts arbitrarily or unreasonably; or (3) rules upon factual assertions not supported by the record. *Stobaugh v. Norwegian Cruise Line Ltd.,* 105 S.W.3d 302, 305 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *see also Wiggins v. Enserch Exploration, Inc.,* 743 S.W.2d 332, 334 (Tex.

App.-Dallas 1987, writ dism'd w.o.j.). Merely because a trial court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). While the trial court's ruling on class certification is subject to an abuse of discretion analysis, there is no right to proceed as a class action. *Southwestern Ref. Co. v. Bernal,* 22 S.W.3d 425, 439 (Tex.2000). Instead, the plaintiff must satisfy all requirements for class certification as set forth in Texas Rule of Civil Procedure 42. TEX.R. CIV. P. 42.

Under Rule 42, all class actions must satisfy four threshold elements: (1) numerosity—the number of plaintiffs is "so numerous that joinder of all members is impracticable"; (2) commonality—"there are questions of law, or fact common to the class"; (3) typicality—"the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy of representation—the proposed representatives "will fairly and adequately protect the interests of the class." TEX.R. CIV. P. 42(a); *Union Pac. Res. Group, Inc. v. Hankins,* 111 S.W.3d 69, 73 (Tex.2003).

In addition to the four threshold requirements, class actions must satisfy at least one of four subdivisions of Rule 42(b). TEX.R. CIV. P. 42(b). Here, the trial court certified the Administrative Fee Class under 42(b)(4), which "is one of the most stringent prerequisites to class certification." TEX.R. CIV. P. 42(b)(4); *Bernal,* 22

---

4. The trial court defined the class as "[a]ll persons who purchased insurance policy form H–0055P or H–0070P from [Appellant] during the period beginning four (4) years prior to the filing of this suit through the date of trial of this cause and were charged a monthly administrative fee after the initial monthly administrative fee."

S.W.3d at 433. Rule 42(b)(4) mandates that the court must find:

that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Tex.R. Civ. P. 42(b)(4). To aid courts in analyzing whether certification under 42(b)(4) is appropriate, the rule provides the following list of non exhaustive factors to consider:

(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.; Bernal,* 22 S.W.3d at 433–34.

█ The trial court certified the Cancellation Class under both 42(b)(2) and 42(b)(4). Rule 42(b)(2) requires proof that Appellant has acted on grounds generally applicable to the class in a manner that makes final injunctive or declaratory relief appropriate with respect to the class as a whole. Tex.R. Civ. P. 42(b)(2). Furthermore, in a Rule 42(b)(2) class action, the injunctive or declaratory relief sought must predominate over the monetary relief sought. *See TCI Cablevision, Inc. v. Owens,* 8 S.W.3d 837, 847 (Tex.App.-Beaumont 2000, pet. dism'd by agr.).

█ In a class action, the trial court must perform a rigorous analysis to determine whether all prerequisites to class certification are met. *Bernal,* 22 S.W.3d at 435. The Texas Supreme Court has mandated a cautious approach to class certification and has expressly rejected the "certify now and worry later" approach. *Id.* In determining the validity of class certification, it is therefore essential that the trial court has an understanding of the "claims, defenses, relevant facts, and applicable substantive law." *Id.* (quoting *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 744 (5th Cir.1996)). Further, we cannot rely on "mere assurances of counsel" to conclude that the predominance and superiority requirements are, or can be, met. *Id.* Although we are limited to determining whether the trial court abused its discretion in ordering class certification, the trial court's exercise of discretion cannot be supported by every presumption that can be made in its favor. *Schein,* 102 S.W.3d at 691. Certification is only appropriate where the trial court can make an initial determination that the individual issues can be considered in a "manageable, time-efficient, yet fair manner." *Bernal,* 22 S.W.3d at 436. An appellate court, in reviewing a trial court's decision, should not err in favor of certification. *See id.* at 434–35; *Enron Oil & Gas Co. v. Joffrion,* 116 S.W.3d 215, 219 (Tex.App.-Tyler 2003, no pet.).

█ Nonetheless, a trial court is afforded considerable authority and discretion in defining the class, determining whether to grant or deny class certification, and in decertifying or modifying the class if necessary as the case develops. *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 406 (Tex.2000). When a class has been improperly certified, appellate courts have discretion to remand rather than render judgment. *See Schein,* 102 S.W.3d at 700 (remanding case and stating whether a class can be certified in light of its opinion is a matter that must be decided by the trial court in the first instance); *Intratex,* 22 S.W.3d at 406 (stating appellate courts

should be reluctant to redefine a fundamentally flawed class definition because the parameters of the new definition may not be evident from the record, and unlike trial courts, appellate courts do not have access to any additional relevant evidence that may facilitate evaluating the definition); *Hardy v. Wise*, 92 S.W.3d 650, 654 (Tex.App.-Beaumont 2002, no pet.) (remanding case without deciding merits of judgment after appellate court concluded trial court improperly certified class and because trial court denied absent class members due process).

### III. Discussion

#### A. Administrative Fee Class

Appellee's claim under the Administrative Fee Class is that Appellant improperly charged a monthly administrative fee that was not authorized or agreed to under the insurance policy. Appellee, however, admits that he agreed to pay a monthly premium in the amount of $173.16. Thus, Appellee does not claim that he did not agree to pay $173.16 a month. Rather, Appellee argues that the administrative fee is not a premium, i.e., he did not agree that $7.50 of his monthly premium would be attributed to administrative costs.

Appellant contends that the trial court failed to adequately establish the class certification requirements for the Administrative Fee Class, including typicality and adequacy of representation under Rule 42(a) and predominance and superiority under Rule 42(b)(4). The Texas Supreme Court has noted that "such issues as commonality, typicality, superiority, and predominance are at least tangentially related to the merits; i.e., one cannot know whether a representative's claim is 'typical' of those of the class without knowing something about the merits." *Hankins*, 111 S.W.3d at 72. Trial courts must be able to look beyond the pleadings to make a reasoned inquiry of the certification issues because class determinations involve considerations enmeshed in the legal and factual issues that comprise the plaintiffs' claims. *Union Pac. Res. Group, Inc. v. Neinast*, 67 S.W.3d 275, 283–84 (Tex.App.-Houston [1st Dist.] 2001, no pet.). We accordingly begin with an examination of the trial court's analysis of Appellee's claims.

The trial court's trial plan anticipates a two-step process in determining whether Appellant breached its contract with the 55P and 70P policyholders. The first step is described as follows:

> PALIC contends that the identical language in the uniform application of every class member, that was attached to and therefore became a part of every class member's contract, that refers to an "administrative fee[,]" coupled with the other language in the policy, creates a contractual right in favor of PALIC to charge the monthly administrative fee in question. Plaintiff contends that the policy does not contain any agreement whereby the policyholder agrees to pay a monthly administrative fee. Both parties contend that the policy is unambiguous on this issue. "When a court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the court is obligate[d] to interpret the contract as a matter of law." Therefore, the court will decide by competing [sic] summary judgment motions whose interpretation on the insurance contract is correct. (citations omitted).

According to the trial plan, if the trial court finds that Appellant's interpretation is correct, judgment will be rendered that the Administrative Fee Class take nothing. However, if the trial court finds that Appellee's interpretation is correct, the trial

plan states that there is a second step needed to determine whether Appellant breached its contract with Appellee:

[T]he court will next have to consider PALIC's argument that the policy allows it to charge a "premium[,]" and that the administrative fee is simply a "premium[.]"

Plaintiff does not contest the fact that the policy allows PALIC to charge a premium. Instead, Plaintiff argues that the administrative fee is not a premium. Plaintiff has presented testimony from PALIC's employees which Plaintiff believes supports this claim. This thus presents a factual dispute that will have to be resolved by a jury. The focus of a trial on this issue will be whether the administrative fee is a premium or something in addition to a premium.

The trial court explicitly recognizes in its description of the first step that when a contract is unambiguous, the trial court must interpret the contract as a matter of law. Since the trial court indicates that it will in fact interpret the contract as a matter of law without mentioning an analysis of the contract's ambiguity and without an explicit finding regarding ambiguity, the trial court apparently presumes that the contract is unambiguous based on the fact that neither party asserts ambiguity. As discussed in further detail below, a determination regarding the contract's ambiguity significantly impacts the class certification analysis for this particular case because it affects the admissibility of parol evidence, whether Appellee's claim can be managed efficiently, and even whether Appellee has a claim at all.

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). If the instrument is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Id.; Jabri v. Qaddura,* 108 S.W.3d 404, 411 (Tex.App.-Fort Worth 2003, no pet.). A contract, however, is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning. *Coker,* 650 S.W.2d at 393–94. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Id.* at 394. Even if neither party asserts that the policy is ambiguous, the court may determine that the policy is ambiguous, and consider parol evidence of the parties' intentions. *See Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex.1995); *Sage St. Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 445 (Tex.1993) (holding that even if neither party pleads ambiguity, a trial judge may conclude a contract is ambiguous); *Coker,* 650 S.W.2d at 393 (concluding agreement was ambiguous even though parties affirmatively asserted it was unambiguous, and trial court and court of appeals agreed it was unambiguous). Thus, the trial court was not bound by the parties' assertions that the contract was unambiguous and was free to determine on its own accord whether the contract is in fact ambiguous or not.

We further note that the trial court's two-step analysis is unnecessary. The issue in this case should be whether Appellant breached its contract with the 55P and 70P policyholders by charging a premium that includes a sum considered internally as an administrative fee. If the contract is unambiguous and there is a certain or definite legal meaning for the term "premium," the trial court should construe the contract as a matter of law. If, on the

other hand, the contract is ambiguous, the issue becomes a fact question for the jury and the trial court should allow the parties to present parol evidence of their intentions.

The trial court notes in its description of the second step of the trial plan's analysis that it will allow Appellee to present testimony from Appellant's employees to support his claim that an administrative fee is not a premium. Recognizing that parol evidence is admitted only upon a finding that the term is ambiguous, it would appear that the trial court deems the term "premium" as found in the contract ambiguous. However, in order for the trial court to properly analyze whether the policy was ambiguous, it needed to first determine whether there is a definite legal meaning or interpretation for the word "premium." *See Coker,* 650 S.W.2d at 393. The policy contains three paragraphs in reference to premiums addressing the payment of premiums, the grace period, and premium changes—none of which define the term "premium." Regarding the payment of premiums, the policy simply recites that:

> The premium is payable monthly, quarterly, semi-annually or annually. Payment of any premium will not maintain the coverage in force beyond the next premium due date, except as provided by the grace period. Any indebtedness of the Insured person to Us arising out of prior claims may be deducted in any settlement under the Group Policy.

Likewise, the meaning of "premium" was not developed in the trial court, and a review of the record reflects little evidence in reference to this critical issue. The trial court's trial plan indicates that this issue would be incorrectly left to the fact finder without first determining whether there is a certain or definite legal meaning of the term "premium" in Texas or any of the other states involved, as evidenced by its anticipated jury issues:

> Question: Did the Defendant fail to comply with the insurance agreement by charging the Plaintiff class a monthly administrative fee?

> In deciding whether the Defendant failed to comply with the insurance agreement you must decide if the administrative fee is a premium.

Consequently, we question whether the class certification requirements of Rule 42 were met despite the lack of evidence regarding the definition of "premium" and the absence of any meaningful analysis of the contract's ambiguity. We conclude the answer to this question is no.

### *Typicality*

■ To satisfy the typicality requirement of Rule 42(a), Appellee must prove that he possesses the same interest and suffered the same injury as the other members of the class, that his claims are based on the same legal theory as the other class members' claims, and that Appellant does not have certain potential defenses peculiar to him. *See* Tex.R. Civ. P. 42(a); *Spera v. Fleming, Hovenkamp & Grayson, P.C.,* 4 S.W.3d 805, 810 (Tex. App.-Houston [14th Dist.] 1999, no pet.). Appellant asserts that Appellee's claim is atypical of the class members defined in the trial court's trial plan because his claim is based on subjective factors particular to his own agreement with Appellant— whether he believed that the administrative fee applied only to the first month or every month. Because Appellee offered no evidence of the other class members' knowledge regarding the administrative fee, Appellant asserts that Appellee cannot show that other policyholders shared his view and, as a result, cannot demonstrate that his claims are typical of the class.

■ Appellee maintains that Appellant is incorrect in asserting that Appellee's theory of liability depends on subjective knowledge regarding the administrative fee. He asserts that under the parol evidence rule, where there is no evidence of fraud and the agreement is complete and unambiguous, extrinsic evidence is not admissible to vary, add to, or contradict the express terms of the agreement. *See King v. Fordice*, 776 S.W.2d 608, 610 (Tex. App.-Dallas 1989, writ denied). While this is true, Appellee's argument only has merit if the policy is unambiguous. *See id.*

If the contract is ambiguous, we are faced with a record reflecting that Appellee did not introduce evidence, and the trial court made no finding, that the class uniformly believed that the administrative fee only applied to the first month or that the fee was uniformly misrepresented by Appellant's agents either at the time of the application or at the time the insureds received the schedule of benefits stating the total amount of premium. In that event, the typicality requirement of Rule 42(a) was not established. On the other hand, if the contract is worded so that it can be given a certain or definite legal meaning, and is therefore unambiguous, the trial court should construe the contract as a matter of law. *Jabri*, 108 S.W.3d at 411. As we previously noted, the record is noticeably void of any meaningful interpretation of the term "premium" and consequently, an analysis of the contract's ambiguity.

■ Regardless of whether the contract is ambiguous, Appellee failed to establish that his contract is typical of all the 55P and 70P policies issued by Appellant during the period beginning four years prior to the filing of this suit. Although Appellee asserted at trial and on appeal that the contracts for every policyholder in the class have "uniform insurance policy form and language relating to the monthly administrative fee," the evidence indicates otherwise. Appellee's counsel called Tommy Chilcutt, an insurance broker and National Marketing Director for American Health Underwriters (AHU), to testify as an expert witness. Since AHU is the company that sold Appellant's 55P policy to Appellee and other policyholders, Chilcutt is familiar with Appellant's policy forms. Appellee's counsel questioned Chilcutt regarding the similarity of Appellee's Texas 55P policy to the 55P and 70P policies offered in other states as follows:

[MR. VITULLO, APPELLEE'S COUNSEL]: Let's start with the application. These are the applications, Exhibit No. 42, from all the different states.

THE COURT: Is that out of the same thing in this book?

MR. VITULLO: Yes.

Q. (By Mr. Vitullo) And up here on the first page, it's got that same form for all the agents that fill it out. Base premium, plus enrollment fee, plus administrative fee, total amount collected; do you see that?

A. Yes, I do.

Q. And that's for Arizona, and we've got the 70, we've got the 55, we've got Missouri. Here's Missouri. It's identical. Do you see that? Here's Oklahoma, identical.

A. Yes.

Q. Right?

A. Yes.

Q. Here's—What is this, South Carolina?

A. It is.

Q. Identical, right?

A. Yes. This is an area that we had to spend the most time on because of how you're identifying down below.

Q. Georgia?

A. Georgia.

Q. Identical. So with respect to the language in the policy application, the terms, the premium, the enrollment fees, plus the administrative fees, and every application in every state that you sold these policies, they're identical, aren't they?

A. Yes.

A thorough review of the record does not support this testimony nor Appellee's assertions on appeal that "those portions of the policy triggered by the 'administrative fee' class are all identical." The record before us consists of 55P and 70P applications for only ten of the eighteen states certified in the Administrative Fee Class. While there is an application in evidence that does not specify a state, it is unclear whether that form is used in the remaining eight states. Further, and more importantly, the applications are not identical. On the 55P applications for South Carolina and Georgia, as well as the application for the unspecified state, there is a significant difference in the language on the applications. As opposed to the fee section in Appellee's application, which contains a space to write in enrollment fees, these applications contain a space to write in the amount of a "one time" policy fee.

```
Base Plan Premium_____
Rider_____ for _____
Rider_____ for _____
Rate-up %_____on_____
Rate-up %_____on_____
x Modal Factor_____
Life Rider_____
+ Enrollment Fees_____
+ Administrative Fee _____

_____ _____
= Total Amount Collected_____
```

**Appellee's Form**

```
Base Plan Premium_____
Rider_____ for _____
Rider_____ for _____
Rate-up %_____on_____
Rate-up %_____on_____
x Modal Factor_____
+ One Time Policy Fee_____
+ Administrative Fee_____

_____ _____
= Total Amount Collected
```

**Other Form**

In assessing whether Appellee's claims are typical of the claims of the Administrative Fee Class, this difference is crucial. *See Gen. Motors Corp. v. Bloyed,* 916 S.W.2d 949, 959 (Tex.1996) (class certification is inappropriate where there is uncertainty as to whether a class action could be properly certified and maintained through trial because there are potentially substantial individual questions of fact and law and obstacles to the manageability of the action on a class basis); *Stobaugh,* 105 S.W.3d at 305 (a trial court abuses its discretion when it rules upon factual assertions not supported by evidence material in the record).

■ When construing the plain meaning of a contract's wording, the court must look at the contract as a whole in light of the circumstances present when the contract was entered; each part of the contract is considered against all other parts to determine its meaning, and there is a presumption that the parties intended every part to have some effect. *Fox v. Parker,* 98 S.W.3d 713, 719 (Tex.App.-Waco 2003, pet. denied). The differences between the ten forms in the record and the uncertainty as to the form used in the other eight states, prevents the trial court from making a "meaningful determination of the certification issues." *See Bernal,* 22

S.W.3d at 435 (quoting *Castano*, 84 F.3d at 744). Where each part of the policy is considered against all other parts to determine its meaning, the trial court's threshold determination of ambiguity may be different for the forms where the policy fee is described as a "one time" fee. For example, the forms that list the policy fee as a "one time" fee, are at the very least, less ambiguous than the forms that do not implicitly limit one of the fees to a "one time" occurrence.

Should the trial court determine, upon further analysis, that the contract is ambiguous, the trial court may consider parol evidence of the parties' intentions. *Nat'l Union*, 907 S.W.2d at 520. Appellee's burden to establish that he did not agree to pay the administrative fee on a monthly basis is much higher where the contract describes the policy fee as a "one time" fee and does not similarly describe the administrative fee as such. If the contract is ambiguous and parol evidence is admissible, Appellee faces the daunting task of establishing typicality in the face of individual subjective factors and the difference in forms. The Texas Supreme Court has emphasized on several occasions that the trial court must determine from the outset that the issues can be litigated in a manageable, time-efficient, yet fair manner. *Schein*, 102 S.W.3d at 685; *Bernal*, 22 S.W.3d at 435–36; *see Bloyed*, 916 S.W.2d at 954.

 Yet, if the contract is unambiguous, the trial court must construe the contract as a matter of law. *Nat'l Union*, 907 S.W.2d at 520; *Jabri*, 108 S.W.3d at 411. Again, the difference in forms is significant. Courts interpret insurance policies in Texas according to the rules of contract construction. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003); *Tex. Farmers Ins. Co. v. Murphy*, 996 S.W.2d 873, 879 (Tex.1999); *Kel-*

*ley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). When construing the policy's language, we must give effect to all contractual provisions so that none will be rendered meaningless. *Schaefer*, 124 S.W.3d at 157. It is much easier to determine that the administrative fee is monthly where the policy fee is the only fee described as a "one time" fee. Accordingly, we conclude that Appellee failed to establish the typicality requirement of class certification.

### Adequacy of Representation

 Appellant argues that Appellee did not establish the adequacy requirement of Rule 42(a) because 1) Appellee is unfamiliar with the issues facing the proposed class and 2) Appellee's admission that he agreed to pay the monthly premium amount that included the administrative fee raises a conflict of interest that undermines the adequacy of his representation. The adequacy requirement of Rule 42(a) requires that Appellee show an absence of antagonism between himself and the potential class members, and an assurance that Appellee will participate meaningfully and confidently in the prosecution of the claims, and/or the defenses, or both. *See* TEX.R. CIV. P. 42(a); *Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 150 (Tex. App.-Austin 1995, writ dism'd w.o.j.). Adequacy of representation is a question of fact addressed to the sound discretion of the trial court, and the trial court does not abuse its discretion in finding adequacy if there is evidence to support the finding. *See Glassell v. Ellis*, 956 S.W.2d 676, 681–82 (Tex.App.-Texarkana 1997, pet. dism'd w.o.j.); *Group Hosp. Serv., Inc. v. Barrett*, 426 S.W.2d 310, 315 (Tex.Civ.App.-Houston [14th Dist.] 1968, writ ref'd n.r.e.). Only a conflict that goes to the very subject matter of the litigation will defeat a finding of adequacy. *Nissan Motor Co. v.*

*Fry,* 27 S.W.3d 573, 583 (Tex.App.-Corpus Christi 2000, pet. denied) (op. on reh'g); *Adams v. Reagan,* 791 S.W.2d 284, 291 (Tex.App.-Fort Worth 1990, no writ).

■ The evidence indicates that Appellee understands the scope of the potential class, the damages being sought, and the fee arrangement with counsel. Although Appellee admits that he agreed to pay a monthly premium, he also testified that he never agreed to pay an administrative fee on a monthly basis. There is no evidence that Appellee is unfamiliar with the issues facing the proposed class, of any actual antagonism between Appellee and the Administrative Fee Class, nor of a conflict that undermines the adequacy of his representation. We conclude that the trial court did not abuse its discretion on the issue of adequacy.

### Predominance

■ Appellant additionally argues that class certification is inappropriate for the Administrative Fee Class because common factual and legal issues do not predominate over any questions affecting only individual members. *See* Tex.R. Civ. P. 42(b)(4). The predominance requirement of Rule 42(b)(4) "is one of the most stringent prerequisites to class certification." *Bernal,* 22 S.W.3d at 433. To determine whether common issues predominate, a court must identify the substantive issues of the case that will control the outcome of the litigation, assess which issues will predominate, and determine if the predominating issues are, in fact, those common to the class.

*Id.* at 434. As discussed in our analysis of the typicality requirement, we are not convinced that the trial court conducted a rigorous analysis of Appellee's breach of contract claim.

■ Because the ambiguity issue essentially turns on the definition of "premium," the predominance requirement is inadequate without a choice-of-law analysis on whether each state permits an insurance company to charge a premium that includes a component that is treated internally as an administrative fee. *See Schein,* 102 S.W.3d at 697. The trial court concluded that there are no conflict of law issues in defining the term "premium," noting that it analyzed Appellant's supplemental letter brief citing statutes that define "gross premium" but found that the statutes referenced the states' definitions of "gross premium" for the purpose of collecting taxes only. In fact, nine of the statutes provided in Appellant's supplemental letter brief defining "premium" explicitly relate to insurance contracts generally, not to tax collection.[5] In all of these states but Indiana,[6] "premium" is defined as "the consideration for insurance, by whatever name called", and most states specifically note that fees by any other name are deemed part of the premium. *See statutes cited in footnote 5.* If the trial court has correctly determined that "the focus of a trial on this issue will be whether the administrative fee is a premium or something in addition to a premium[,]" then the policyholders in Alabama, Arizona, Arkansas, Georgia, Indiana, Nevada,

---

5. *See* Ala.Code §§ 27–14–1(2), 27–14–2 (1975); Ariz.Rev.Stat. Ann. § 20–1103 (2003); Ark.Code Ann. § 23–79–101(2) (Michie 2001); Ga.Code Ann. § 33–24–1(2) (1995); Ind.Code Ann. § 27–1–2–3(w) (West 2003); Nev.Rev. Stat. Ann. 679A.115 (Michie 2002); Okla. Stat. Ann. tit. 36, § 3603 (West 1999); S.C.Code Ann. § 38–1–20(31) (Law.Co-op.2003); W. Va. Code § 33–1–17 (1966).

6. Indiana's definition is similar. *See* Ind.Code Ann. § 27–1–2–3(w) (West 2001) ("[M]oney or any other thing of value paid or given in consideration to an insurer ... shall include ... policy fees, admission fees, membership fees").

Oklahoma, South Carolina, and West Virginia, have no claim as a matter of law in their home states. *See statutes cited in footnote 5.* The Due Process Clause limits the extent to which one state's law can be applied to claims that arise in many states. U.S. CONST. amend. XIV; *Tracker Marine, L.P. v. Ogle,* 108 S.W.3d 349, 355 (Tex. App.-Houston [14th Dist.] 2003, no pet.). Appellee had the burden of presenting an analysis of state law evaluating any differences between the states enumerated in the class definition and failed to satisfy that burden. *See id.* at 352.

■ The trial court based its finding that Texas law would apply to the Administrative Fee Class entirely on Appellant's physical location in Texas. But Texas "does not apply the law of the state where a defendant is headquartered to every claim for economic damages that can be alleged against the defendant." *Schein,* 102 S.W.3d at 698. Rather, Texas uses the Restatement (Second) of Conflict of Laws' most significant relationship test to decide choice-of-law issues. *Id.* at 696. That test requires consideration of the relationship of each transaction to each state involved. *Id.;* RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 188 (1971). The Restatement provides that the following should be taken into account in determining the law applicable to a particular dispute in contract: "(a) the place of contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicil[e], residence, nationality, place of incorporation, and place of business of the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2). Appellant asserts that aside from Appellant's domicile in Texas, every one of these factors occurred in eighteen separate states. Because the trial court determined that the law was the same in all eighteen states, we do not have

the benefit of an analysis of these factors. If the Administrative Fee Class' breach of contract claim must be adjudicated under the law of many jurisdictions, the class is not manageable. *Schein,* 102 S.W.3d at 697. Just as the Texas Supreme Court did in *Schein,* we decline to say that Texas law will not govern the Administrative Fee Class' breach of contract claim. *See id.* We can say, however, that Appellee wholly failed to demonstrate that Texas law should apply to so many of those claims that common legal issues will predominate. *See id.* at 698–99.

■ Appellee argues that "[t]he potential differences in what is permitted in collecting a premium is not important to the substantive legal principle in evaluating the contract terms." According to Appellee, the issue is not whether a state permits charging an administrative fee, but whether the parties to the policy contracted for its payment. Appellee's contention fails to recognize that the issue of whether Appellee agreed to pay the administrative fee is entirely dependent on whether an insurance company can charge a premium that includes an amount treated internally as an administrative fee. As previously discussed, the trial court must determine whether there is a definite legal meaning or interpretation for the word "premium" in order to address whether the contract is ambiguous, and ultimately the respective rights of the parties. *Coker,* 650 S.W.2d at 393. The various states' statutory definitions, many of which expressly relate to the interpretation of insurance contracts, are relevant to the interpretation of the contracts in each class member's state, especially given each state's strong interest in regulating the insurance industry. *See e.g. Crain v. Nat'l Am. Ins. Co.,* 2002 OK CIV APP 77, 52 P.3d 1035, 1042 (stating "[b]ecause the insurance industry carries such an important

594

public mission, Oklahoma recognized the need to regulate the State's insurance companies by constitutional provisions and establishment of the Insurance Commission to oversee the execution of the industry's state-related policy goals."); *Mem'l Hosp. Sys. v. Fisher Ins. Agency, Inc.*, 835 S.W.2d 645, 651–52 (Tex.App.-Houston [14th Dist.] 1992, no writ) (op. on reh'g) (stating Texas has strong interest in the regulation of insurance).

### Superiority

■■■■■ Appellant's final argument in support of decertifying the Administrative Fee Class is that a class action is not superior to other available methods for the fair and efficient adjudication of the claims. *See* Tex.R. Civ. P. 42(b)(4). A class action is superior to other methods of adjudication where any difficulties that might arise in the management of the class are outweighed by the benefits of classwide resolution of common issues. *See Weatherly v. Deloitte & Touche*, 905 S.W.2d 642, 654 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd w.o.j.). In assessing the superiority of a class action, the court should consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (D) the difficulties likely to be encountered in the management of a class action.

Tex.R. Civ. P. 42(b)(4). "Superior" means more than equivalent; the class action must be more fair and efficient than other methods. *Schein*, 102 S.W.3d at 700. According to Appellant, a more superior forum exists to resolve the class members' claims—the individual insurance depart-

ments in the states where each class member resides. Appellant argues that when alternate methods, like administrative proceedings, are a more efficient and effective means of settling the controversy, class certification should be denied. As an example, Appellant points out that in Texas, the Texas Commissioner of Insurance and the TDI are empowered to examine policy language, conduct investigations, adjudicate complaints, and award appropriate relief. *See* Tex. Ins.Code Ann. § 31.002(1) (Vernon Supp.2004). Thus, if Appellee had brought his administrative fee claim to the attention of the TDI and it determined that Appellee's claim had merit, the TDI could take action against not only Appellant, but all insurance companies that sell insurance in Texas, to modify their policies or pay penalties. For these reasons, Appellant asserts that the TDI is uniquely able to address Appellee's claims and award Texas health insurance policyholders any economic recovery for which they might be entitled.

■■■■ The sole factor that the trial court discussed in its superiority analysis was the small economic value of the class members' individual claims. The trial court noted that because of the small claim value for the individual class members, the alternative to a class action is no action at all. Certification, however, is not merely a vehicle to make sure no claim goes untried. *Tracker Marine*, 108 S.W.3d at 361. If that were the sole test, our limited resources might be diverted to trying claims that are frivolous or trifling. *Id.* In *Bernal*, the Texas Supreme Court addressed the plaintiffs' argument that the most compelling reason to certify a class action arises when the cost of litigating individual claims exceeds the potential individual recovery. 22 S.W.3d at 439. The court rejected the argument stating:

We do not second-guess plaintiffs' contention that, from a financial perspective, some claims may not be worth pursuing if class-action treatment is denied. But proceeding as a class action may very well cost more in the long run, if, as can be expected here, the class must ultimately be dissolved because there is no manageable way, fair to both parties, to resolve the individual issues. *Id.* Recognizing the similarity between the plaintiff's argument in *Bernal* and the trial court's justification for finding superiority in this case, we apply the same line of reasoning. Consequently, we conclude that Appellee presented insufficient evidence to establish that a class action is the superior method of adjudicating this issue.

### Administrative Fee Class Holding

An assessment of the contract's ambiguity is critical in determining the appropriateness of certifying the Administrative Fee Class, and the record is not sufficient to make that threshold determination. *See Fein v. R.P.H., Inc.*, 68 S.W.3d 260, 266 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (holding that the trial court errs if it does not construe an unambiguous contract as a matter of law and, instead, submits the issue to the jury). Although we cannot determine based on the undeveloped record before us whether the contract is ambiguous,[7] we can certainly say that an adequate understanding of the "claims, defenses, relevant facts, and applicable substantive law" requires an analysis of the ambiguity issue. *See Bernal,* 22 S.W.3d at 435. At the very least, an informed analysis would begin with knowledge regarding the 55P and 70P application and policy forms for each and every state included in the Administrative Fee Class. As it stands, the record includes policy applications for only ten of the eighteen states, and of those included, there is a substantial semantic difference between the forms. Having determined that Appellee failed to establish the class certification requirements of typicality, predominance, and superiority, we hold that Appellee failed to demonstrate that the Administrative Fee Class should be certified and sustain Appellant's first issue.

### B. Cancellation Class

In its second issue, Appellant contends that the trial court failed to adequately establish the class certification requirements for the Cancellation Class, including commonality, typicality, and adequacy of representation under Rule 42(a) and predominance under Rule 42(b)(4). Appellant vehemently argues that Appellee is a completely inadequate representative for the Cancellation Class because Appellee seeks only to recover fees for his attorney. Appellant contends that Appellee abandoned all substantive relief for the Cancellation Class and attempts to bind them all to a take-nothing judgment on this claim thereby demonstrating antagonistic interests that preclude him from adequately representing the Cancellation Class.

The trial court found that Appellee demonstrated that he will fairly and adequately protect the interests of the class because he already obtained the agreed temporary injunction that protected every class member from having their insurance policies cancelled. The agreed temporary injunction, however, would have affected each insured differently. It is undisputed that, after Appellant sent its December 31, 2001 non renewal letter, some class members, like Appellee, maintained their coverage while others did not. According to

---

7. The record before us does not contain policy applications for all of the states and the states that are included in the record are not all the same.

Tony Huang, Appellant's second vice president, there were 604 people with 55P policies in Texas on December 31, 2001. By the end of February, there were 544 people with 55P policies in Texas, and at the end of June there were only 178 people with 55P policies in Texas. Any class members who located a new insurance provider or allowed their coverage to lapse in reliance on the December 31, 2001 letter may have suffered a loss much greater than that of Appellee, for which the remedy of a temporary injunction simply would not suffice. Some of the policyholders may have taken a plan with far less coverage, some may have taken a plan with a much higher cost, and some may have foregone insurance coverage all together.

As for the policyholders that retained their coverage with Appellant, a temporary injunction might not adequately represent their needs. For example, the record reflects that a Texas 55P policyholder, Linda Bernard, wrote a letter to the TDI on January 30, 2002 expressing concerns over the cancellation of her 55P policy. According to Mrs. Bernard, her husband suffered from prostate cancer that required him to take a shot costing $680 every three months and another medication costing around $330 per month. Mrs. Bernard claimed in her letter that no other insurance company would provide coverage for her husband with his condition. James Boaz wrote a complaint letter to the TDI on April 3, 2002 also expressing concerns over the cancellation of his 55P policy. Mr. Boaz had been treated for lung cancer that same year and expressed grave doubt that he would be able to obtain similar coverage in light of his illness. In addition to the possibility that these policyholders would not be satisfied with a temporary injunction as their sole remedy, they might very well wish to seek claims for various other causes of action. Appellee, for instance, originally sought class damages for insurance code article 21.21 violations, conversion, and breach of the duty of good faith and fair dealing in addition to his breach of contract claim. *See* Tex. Ins. Code Ann. art. 21.21.

We recognize that some of our sister courts have stated that such speculative claims concerning potential conflicts are insufficient to show that the trial court abused its discretion in finding adequacy of representation. *Phillips Petroleum Co. v. Bowden,* 108 S.W.3d 385, 399 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *Peters v. Blockbuster, Inc.,* 65 S.W.3d 295, 305 (Tex.App.-Beaumont 2001, no pet.); *Employers Cas. Co. v. Tex. Ass'n of Sch. Bds.,* 886 S.W.2d 470, 475 (Tex.App.-Austin 1994, writ dism'd w.o.j.); *Dresser Indus., Inc. v. Snell,* 847 S.W.2d 367, 373–74 (Tex.App.-El Paso 1993, no writ). In *Employers Casualty Co. v. Texas Association of School Boards,* the Austin Court of Appeals ruled that the speculative claims of the defendants regarding potential conflicts between the class members were insufficient to establish that the trial court abused its discretion in certifying the class. 886 S.W.2d at 475–76. The court reasoned that even if the trial court later discovered the speculative claims were true, it could redefine the class, create subclasses, or even withdraw certification at any time before final judgment. *Id.* at 476. But it is precisely this type of "certify now and worry later" approach that the Texas Supreme Court expressly rejected in *Bernal.* 22 S.W.3d at 435.

It is true that trial courts have broad discretion afforded to them in certifying a class. *Bally Total Fitness Corp. v. Jackson,* 53 S.W.3d 352, 357 (Tex.2001). The Texas Supreme Court has recently curbed the breadth of that discretion, however, by instructing trial courts to scrutinize rigorously whether all Rule 42 prerequisites to certification have been met. *See Schein,*

102 S.W.3d at 690; *Bernal,* 22 S.W.3d at 439; *Neinast,* 67 S.W.3d at 280. The *Bernal* court, in initiating a more stringent standard for class certification, relied extensively on interpretations under the federal class action rule, on which Rule 42 is patterned. FED.R.CIV.P. 23; *Bernal,* 22 S.W.3d at 433, 435–36. Under the federal class action rule, the adequacy of representation requirement is not met if the court discerns potential conflicts between the interests of the plaintiffs and the interests of the absent class members. *In re Universal Access, Inc.,* 209 F.R.D. 379, 386 (E.D.Tex.2002); *Walton v. Franklin Collection Agency, Inc.,* 190 F.R.D. 404, 410 (N.D.Miss.2000); *Kalodner v. Michaels Stores, Inc.,* 172 F.R.D. 200, 209 (N.D.Tex. 1997). Although the flexibility of Rule 42 "enhances the usefulness of the class-action device," actual, rather than presumed, conformity to the requirements of the rule is indispensable. *Bernal,* 22 S.W.3d at 435 (quoting *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)). Because of the Texas Supreme Court's recent narrowing of the trial court's broad discretion, we subject the trial court's certification order to the same narrowed standard and conclude that Appellee has not demonstrated that he will fairly and adequately protect the interests of the class.

██ Further, Appellee has not demonstrated that he suffered any financial harm and admits that he did not take steps to find replacement coverage as a result of Appellant's December 31, 2001 non renewal letter. Accordingly, Appellee failed to establish that he has the same interests or the same injury as other potential class members who did obtain new coverage as a result of the non renewal letter or who are unable to obtain comparable replacement coverage. Moreover, any claim by policyholders who did alter their position

as a result of the non renewal letter will present a different set of issues to a jury than would Appellee's claim. For these reasons, we conclude that Appellee did not establish the typicality, commonality, and predominance requirements of Rule 42.

In addition to seeking certification under the predominance requirement of Rule 42(b)(4), Appellee alternatively sought certification of the Cancellation Class under Rule 42(b)(2) which requires proof that Appellant has acted on grounds generally applicable to the class in a manner that makes final injunctive or declaratory relief appropriate with respect to the class as a whole. TEX.R. CIV. P. 42(b)(2). The trial court found that in obtaining injunctive relief for the class, Appellee satisfied Rule 42(b)(2). For reasons already discussed, we conclude that injunctive relief was not appropriate with respect to the Cancellation Class as a whole. Having determined that Appellee failed to establish the class certification requirements set forth in Rule 42(b)(2) as well as the typicality, commonality, adequacy, and predominance requirements of Rule 42, we hold that Appellee failed to demonstrate that the Cancellation Class should be certified.

## C. DUE PROCESS

██ Appellant's third and final issue takes the position that the trial court violated Rule 42 and due process under the federal and state constitutions in permitting Appellee to change his class definitions and damage theories on the morning of the class-certification hearing. Due process requires that defendants to a class action receive notice before a class-certification hearing and have an opportunity to be heard on the question of certification. *Monsanto Co. v. Davis,* 25 S.W.3d 773, 785 (Tex.App.-Waco 2000, pet. dism'd w.o.j.); *In re M.M.O.,* 981 S.W.2d 72, 80 (Tex. App.-San Antonio 1998, no pet.). Because we hold the certification order before us

improper with respect to both the Administrative Fee Class and Cancellation Class, we do not address Appellant's third issue. On remand, Appellant will have had ample notice of the changes made by Appellee on the morning of the certification hearing.

## IV. CONCLUSION

The Texas Supreme Court has held that appellate courts have broad discretion to remand in the interest of justice. *Scott v. Liebman*, 404 S.W.2d 288, 294 (Tex.1966). As long as there is a probability that a case for any reason has not been fully developed, an appellate court has the discretion to remand rather than render a decision. *Kondos v. Lincoln Prop. Co.*, 110 S.W.3d 716, 724 (Tex.App.-Dallas 2003, no pet.); *Bayway Serv., Inc. v. Ameri–Build Constr., L.C.*, 106 S.W.3d 156, 161 (Tex.App.-Houston [1st Dist.] 2003, no pet.). For the case at hand, we will not interfere with the trial court's discretion to determine whether to grant or deny class certification and its responsibility to manage the class action as the case develops. *See Schein*, 102 S.W.3d at 700 (stating, "We cannot say, of course, that no class can be certified in this case; that matter must be decided by the trial court in the first instance."); *Intratex*, 22 S.W.3d at 406 (stating, "Remanding for the trial court to consider redefinition is consistent with the trial court's discretion with regard to class certification and its responsibility to manage a class action."); *see also* TEX.R. CIV. P. 42(c)(1) (granting trial court authority to determine whether a class should be certified). We reverse the trial court's judgment certifying the Administrative Fee Class and Cancellation Class and remand this case to the trial court for further proceedings consistent with this opinion.